UNITED STATES of America,
Plaintiff-Appellee,

v.

ARIZONA FUELS CORPORATION, and
Eugene Dalton, President,
Defendants-Appellants.

UNITED STATES of America,
Plaintiff-Appellant,

v.

ARIZONA FUELS CORPORATION, and
Eugene Dalton, President,
Defendants-Appellees.

Nos. 9–53, 9–54.

Temporary Emergency Court of Appeals.

Argued Nov. 24, 1980.

Decided Dec. 24, 1980.

240

Alan S. Novins (argued), Lobel, Novins & Lamont, Washington, D. C., with whom Martin Lobel, Washington, D. C., and Leroy Axland, Suitter, Axland & Armstrong, Salt Lake City, Utah, were on briefs for Arizona Fuels Corp. and Eugene Dalton.

Kenneth J. Barnes (argued) of the Civil Division of the Dept. of Justice, Washington, D. C., with whom Dennis G. Linder and R. John Seibert, and Alice Daniel, Asst. Atty. Gen., Washington, D. C., and Michael D. Hawkins, U. S. Atty., Phoenix, Ariz., were on briefs for the United States of America.

Before ESTES, BECKER and DUNI-WAY, Judges.

DUNIWAY, Judge:

In No. 9–53 Arizona Fuels Corporation and its sole stockholder and President, Eugene Dalton, appeal from those parts of the district court's judgment that order them to comply with the Old Oil Allocation Program, 10 C.F.R. § 211.67 (Entitlements Program), to pay $941,432 plus $325,459.74 in interest for unpaid entitlements obligations, and to pay a civil penalty of $1 million.

In No. 9–54 the United States appeals from the district court's dismissal of its claim against Dalton and Arizona Fuels for additional unmet entitlements obligations as to which exception applications are currently pending before the Federal Energy Regulatory Commission (Commission).

We affirm in No. 9–53; we reverse in No. 9–54.

## I. The Facts

Briefly stated, "[t]he Entitlements Program, [10 C.F.R. § 211.67,] requires refiners who run a greater percentage of lower tier price controlled crude than the national average to purchase entitlements from those refiners who run a smaller percentage than the national average, thereby equalizing the cost of crude oil for all refiners." *Husky Oil Co. v. Department of Energy*, 582 F.2d 644, 645 (Em.App.1978) (footnote omitted). For a more detailed description of the Entitlements Program, see *Pasco, Inc. v. FEA*, 525 F.2d 1391, 1395 (Em.App.1975); *Cities Service Co. v. FEA*, 529 F.2d 1016, 1020–1021 (Em.App.1975), *cert. denied*, 426 U.S. 947, 96 S.Ct. 3166, 49 L.Ed.2d 1184 (1976).

On the basis of information supplied by the refiners, entitlements obligations are published by the Department of Energy (Department) each month and are payable to refiners in a sell position by the end of the month. 10 C.F.R. § 211.67(b), (c), (i). A refiner may appeal its entitlements obligation, 10 C.F.R. § 205.100 *et seq.*, as well as apply to the Office of Hearings and Appeals (OHA) of the Department for exception relief from its obligation to purchase entitlements because of "serious hardship or gross inequity." 10 C.F.R. § 205.50(a)(1).

Arizona Fuels is a small, independent refiner, and until August, 1975, was a seller of entitlements because of its use of a high proportion of more expensive new oil. In that month, however, it began to use a greater proportion of old oil and thus became subject to Department orders to buy entitlements. It quickly fell into arrears, and in September, 1977, the United States brought this action. At that time, Arizona Fuels owed approximately $1 million in unpaid entitlements.

After a hearing, the district court, on September 27, 1977, issued a temporary restraining order directing Arizona Fuels and Dalton to comply with the Entitlements Program in future months. This order was extended indefinitely, after a second hearing, on November 29, 1977. Because Arizona Fuels still failed to comply with its entitlements obligations, the court, on February 9, 1978, ordered Arizona Fuels and Dalton to show cause why they should not be found in contempt.

After a contempt hearing, the court, on April 13, 1978, issued a third order requiring Arizona Fuels and Dalton to pay all entitlements obligations accruing since September 27, 1977. The court further ordered them to place in escrow any funds received from a legal action concerning Major Oil Co., a subsidiary of Arizona Fuels, for the purchase of entitlements. The court stated that "[i]n the event that these escrow funds are not sufficient to cover the costs of purchasing entitlements ... the burden is on the defendants to make a clear and specific showing of impossibility to comply rather than a conclusory affidavit such as that filed by Eugene Dalton. This showing should include the production of defendants' books at any future hearings on this matter to substantiate the claim, and the appearance of defendant to take the stand and testify under oath ...."

The court reaffirmed its April 13 order by an order of July 20, 1978, following a hearing on Arizona Fuels' and Dalton's motion for reconsideration or stay of the April order. At this hearing the parties agreed to file cross motions for summary judgment,

and oral argument was held on these motions in October, 1978.

The case was dormant during 1979, but Arizona Fuels and Dalton continued to defy the Entitlements Program. Thus, in February, 1980, when the court granted an order to show cause why Arizona Fuels and Dalton should not be held in contempt, Arizona Fuels' unpaid entitlements obligations had reached the commanding figure of nearly $20 million. A show cause hearing was held March 17, 1980.

On March 25, 1980, the court issued an order finding Arizona Fuels and Dalton in contempt of court and fining each of them $1,000 a day until they complied with the orders of the court or showed evidence of their inability to comply. The court also granted the government's motion for summary judgment as to Arizona Fuels' entitlements obligations incurred in the period from August, 1975 to July, 1977. Arizona Fuels had applied to OHA for exception relief as to these obligations, but had been granted only partial relief. Because the Commission, which now hears appeals from OHA, did not yet exist, OHA's disposition as to these entitlements was final and the court found it to be supported by substantial evidence. However, because exceptions appeals were still pending before the Commission as to Arizona Fuels' post July, 1977, entitlements obligations, the court dismissed the government's complaint as to these "non-final" entitlements obligations. The court once again reaffirmed its earlier orders that defendants comply with the Entitlements Program.

On May 6 and 7, 1980, the court held hearings on the government's motions for imposition of sanctions and for entry of judgment. Evidence was presented with regard to defendants' financial ability to comply with Arizona Fuels' entitlements obligations, as well as their compliance with prior discovery orders, and the court entered the judgment appealed from on June 26, 1980. The court awarded the government $941,432 plus $325,459.74 in interest for pre-July, 1977 "final" entitlements obligations and further levied a $1 million civil penalty against both defendants. The court dismissed the government's complaint "with respect to all non-final decisions of the Department of Energy from which appeals have been taken"—Arizona Fuels' entitlements obligations from July, 1977, to the present, amounting to approximately $24 million. Finally, the court ordered the defendants to "fully comply on a timely basis with their entitlement obligations as they arise on a monthly basis."

## II. The Government's Appeal—No. 9–54.

The government appeals from the dismissal of its claim to entitlements obligations as to which exception proceedings are still pending.

The Entitlements Program explicitly states that "[t]he filing of an application for an exception shall not constitute grounds for non-compliance with the requirements of the regulation, ruling or generally applicable requirement from which an exception is sought unless a stay has been issued . . . ." 10 C.F.R. § 205.50(c). Similarly, 10 C.F.R. Subpart I, § 205.120(c) reiterates: "All applicable DOE orders, regulations, rulings, and generally applicable requirements shall be complied with unless and until an application for a stay or temporary exception is granted."

■ Arizona Fuels' entitlements obligations were payable at the end of each month in which they were published by the Department in the Federal Register. 10 C.F.R. § 211.67(c) & (i). Arizona Fuels did not receive a stay or temporary exception under 10 C.F.R. Subpart I, § 205.120 et seq. or 18 C.F.R. § 140(e)(4). Indeed, it does not appear from the record that such a stay was even requested. In these circumstances, Arizona Fuels was bound to comply with its entitlement obligations, and the district court erred in dismissing the government's complaint.

## III. Defendants-Appeal—No. 9–53.

### A. The Civil Penalty.

■ Under 15 U.S.C. § 754(a)(3)(A) a civil penalty of up to $20,000 may be imposed on a company for violation of Department

regulations "with respect to activities relating to the production, distribution, or refining of crude oils." Under 15 U.S.C. § 754(a)(4) a corporate director, officer or agent "who knowingly and willfully authorizes, orders, or performs any of the acts or practices constituting in whole or in part a violation [of the entitlements regulations] . . ." will be subject to the same penalty. In 10 C.F.R. § 205.203(a)(2) the Department interprets "each violation" to refer to each day a firm fails to meet its entitlements obligations. The $1 million penalty imposed by the court for defendants' noncompliance with their entitlements obligations is thus well within the statutory limit as interpreted by the regulation even if the penalty were only levied for defendants' failure to pay their "final" pre-July, 1977, obligations.

Although it would not appear that a finding of willfulness is necessary under the statute in order to impose civil penalties on the company as opposed to its officers, the question is of little moment in this case. Defendants' argument that their failure to comply with their obligations was not willful is without merit; "[t]he record is replete with evidence of [their] willful failure to pay [their] entitlement obligations." Order of June 26, 1980, p. 2.

Despite repeated hearings and repeated opportunities since this action was filed in 1977, defendants have failed to produce evidence of their inability to comply with their obligations. Instead, the record indicates that they could easily have complied at least with the "final" entitlement obligations due for the period August 1975 to July 1977. The sum of over $2.5 million which Arizona Fuels lent to Dalton and which Dalton used to purchase a cattle ranch for himself would easily have covered Arizona Fuels' entitlements obligations for this period.

### B. *The Order to Comply with the Entitlements Program.*

■ The district court ordered "that defendants shall fully comply on a timely basis with their entitlement obligations as they arise on a monthly basis, in accordance with 10 C.F.R. § 211.67 and orders of this Court." Defendants mistakenly understand this order to require them to pay all of their entitlements obligations including those for which exception proceedings are yet pending. Even understood in this way, however, the order is entirely appropriate. Until a stay is *granted* or until Arizona Fuels overturns its entitlements obligations through a *successful* appeal or through the *grant* of exception relief, it is required under the regulations to pay its entitlements obligations as published by the Department in the Federal Register. It must pay these obligations whether they are past due or are just now arising. Moreover, defendants' argument that an evidentiary hearing should have been held before the issuance of this order ill suits them in light of their consistent failure to present substantial evidence of impossibility of compliance, despite numerous opportunities.

### C. *Order to Pay Pre-July, 1977, Entitlements Obligations.*

■ The district court found that OHA's denial of the exception relief sought by Arizona Fuels for its pre-July, 1977, entitlements obligations was supported by substantial evidence. Defendants argue that our decision in *Husky Oil Co. v. DOE*, 582 F.2d 644 (Em.App.1978) requires that we reverse this portion of the district court's judgment.

In *Husky* we held that the Department's explicit use of a negative profit margin "for purposes of evaluating current financial posture and determining exception relief" was invalid. 582 F.2d at 653. But here there is nothing in the record to indicate that OHA knew or should have known that its action on Arizona Fuels' applications for exception relief would impose a negative profit margin on the company. And in any event, defendants did not present substantial evidence before the district court showing that payment of these obligations would have forced the company to operate at a loss. Indeed, the record shows that the company could easily have paid these obligations.

"In the absence of exceptional circumstances not present in these cases, there is a rebuttable presumption of validity of findings of fact by [the] administrative agency, which casts the burden of proof of invalidity on the party challenging the findings of fact. *Anniston Manufacturing Co. v. Davis*, 301 U.S. 337, 357, 57 S.Ct. 816, 825, 81 L.Ed. 1143, 1156 (1937); *Coleman v. PACCAR, Inc.*, 424 U.S. 1301, 1306, 96 S.Ct. 845, 848, 47 L.Ed.2d 67, 72 (1976) . . ." *Petraco Valley Oil & Refining Co. v. DOE*, 633 F.2d 184 (TECA Nos. 5–47 and 5–48, 1980).

Arizona Fuels and Dalton have not met their burden of proof. The cause of Arizona Fuels' financial condition is not the entitlements program, from which defendants profited, but is defendant Dalton's draining away from Arizona Fuels of its financial resources.

### D. *Dalton's Liability.*

Finally, Dalton argues that he should not be held personally liable for Arizona Fuels' unmet obligations.

■ Dalton is President and sole stockholder of the company. The record shows that large amounts of corporate funds have been diverted to Dalton's personal use. ". . . [W]here the corporation['s] . . . financial resources are drained off by the controlling shareholder . . ., there is more justification for holding the latter liable . . . ." Henn, *Corporations*, 2d ed. (West), 252, 254. See also cases noted in 51 Harv.L.Rev. 1401, 1402, and 14 Cal.L.Rev. 19–21. Dalton cannot feign ignorance of the company's entitlements obligations. In these circumstances, the district court was correct in holding Dalton jointly liable for Arizona Fuels' entitlements obligations.

In No. 9–53 the judgment is affirmed. In No. 9–54 the portion of the judgment appealed from is reversed and the matter is remanded for further proceedings consistent with this opinion.