Gholam H. ZAHIR, Plaintiff,

v.

SHELL OIL COMPANY, Andy Saberi, Sabek, Inc., Defendants.

Nos. 9–70 to 9–72.

Temporary Emergency Court of Appeals.

Argued Jan. 7, 1983.

Decided Sept. 19, 1983.

David D. Ring (argued), Fabris & Ring, San Francisco, Cal., and Joseph H. Fields, Houston, Tex., for Shell Oil Co.

Stacy W. Swor (argued), and Susan Barry (argued), Evans, Farber & Swor, San Francisco, Cal., for Gholam H. Zahir.

Philip Keith (argued), and W. Thomas Amen, Amen & Keith, San Francisco, Cal., for Andy Säberi and Sabek, Inc.

Before CHRISTENSEN, ESTES and DUNIWAY, Judges.

DUNIWAY, Judge:

In this case there are three appeals. In No. 9–70, Shell Oil Company appeals from a money judgment against it in favor of Gholam H. Zahir. In No. 9–71, Zahir appeals from other parts of the same judgment. In No. 9–72, Andy Saberi appeals from a judgment against him and in favor of Shell on Shell's cross complaint and Saberi and Sabek, Inc., appeal from a judgment for Zahir on their counterclaim against Zahir.

## I. *The Facts.*

This case arises from a controversy about a "Shell" gasoline service station in San Francisco. The station is not owned by Shell, but by someone not a party to the case. Saberi was a lessee of the property. On August 15, 1977, he and Shell entered into a detailed, written "dealer contract" running through December 27, 1980. It provided for sale at the service station of Shell branded products, particularly gasoline, Saberi being the dealer. The contract was not assignable by Saberi, except with Shell's express written consent. It also required Saberi to indemnify Shell against "injury or death of persons," or "damage to property caused by or happening in connection with the operation of [Saberi's] station."

Zahir was employed by Saberi to manage the station. By a letter agreement dated May 1, 1978, Saberi turned over the operation of the station to Zahir, for a monthly payment by Zahir to Saberi of $1,500 plus 12½% of sales from "back room" operations or $300 per month, whichever was greater. Saberi was to keep the books for $300 per month. Thus Zahir became the operator of the station. However, Saberi did not tell Shell, nor ask for its written consent.

For a time thereafter, Saberi placed orders for gasoline for the station with Shell, and made payments to Shell, and all credit card purchases were in Saberi's name. However, well before July 10, 1979, Shell had learned that Zahir was the operator of the station. On April 26, 1979, Zahir wrote to Shell saying "My name is Hussein Zahir, I run Bay Shell Station on two years Lease from Mr. Andy Saberi." Shell did not then object, and continued to sell gasoline and other products to Zahir. On June 27, 1979, Shell's district manager wrote to Saberi stating that "in recent months" it had come to Shell's attention that Saberi had leased the station to Zahir. The letter continued:

This revelation, along with watching the station appearance deteriorate under its current management, causes me to ask that you recover the station and operate it under the terms and conditions we originally agreed.

Saberi served two successive three-day notices on Zahir to cure defaults or to quit the premises on June 29, 1979. He followed this, on July 3, with an action in unlawful detainer against Zahir in California court. Zahir, however, remained in possession. Saberi then asked Shell to stop delivery of gasoline to the station, confirming the request by letter on July 13. Shell made its last delivery to Zahir on July 15, and transferred the gasoline allocation to other stations.

Some time later, in August, 1979, Zahir left the country for a time because of a death in his family. Apparently he then closed the station, if he had not done so sooner, and told relatives to watch over the station in his absence. Saberi noticed that the station was vacant and being vandalized. He re-entered it on August 23, and began operating it, selling gasoline supplied by Shell. When Zahir returned to San Francisco, he went to the station on September 16, 1979. There was an altercation, and apparently the parties agreed to close the station until the right to possession could be decided in court. Shell again ceased deliveries to the station.

On October 2, 1979, counsel for Saberi wrote to Shell as follows:

As you may or may not be aware, this office represents Andy Saberi and Sabek, Inc. Enclosed for your information is a copy of two letters sent by us to the Department of Energy pertaining to the problems which exist at 3039 Van Ness Avenue. As you can see, our client takes the position that it and not Shell Oil Company is the supplier at that location and hence any action by the Department

of Energy concerning the allocation should run against our client and not against Shell. In this regard, Mr. Saberi has asked me to inform you that he will indemnify and hold Shell Oil Company harmless from any cost or expense associated with any refusal by Shell to supply gasoline to Mr. Zahir or the 3039 Van Ness Street location.

Zahir took his claims to the Department of Energy, which wrote to Shell on October 11, 1979, stating that Shell "may be" in violation of the Federal Energy Regulations because of its failure to supply Zahir. Shell replied on November 1 that it would make a good faith effort to supply the station. It claims that its effort to deliver gasoline on November 1 failed because Saberi parked his car over the station's tanks. Zahir claims that this was a put-up job between Shell and Saberi. Shell did resume deliveries on November 19, after Zahir had obtained a state court injunction against interference by Saberi. Shell, however, withdrew the use of the Shell trademark, credit cards, and other "Shell" services.

On December 28, 1979, the California court awarded Saberi a judgment in his unlawful detainer action against Zahir. Zahir then quit the premises. The judgment of the California court in the action states that Zahir's possession had been unlawful since July 3, 1979.

Saberi asserted a large damage claim against Zahir, and started proceedings to obtain a trust deed sale of some property of Zahir, who then sued, in state court, to enjoin the sale and for a declaration of rights and obligations. The parties settled the action, and the settlement recites:

All obligations under the operating agreement entered into by Mr. Zahir and Mr. Saberi are hereby released, in relation to the Shell station in San Francisco.

## II. *Proceedings in the Trial Court.*

Zahir's amended complaint contained five claims for relief. The first alleged violation by Shell of the Emergency Petroleum Allocation Act of 1975, 15 U.S.C. § 751 *et seq.,* (the Act) and of the regulations under it. The second alleged wrongful failure to re-

new Zahir's franchise as a violation of the Petroleum Marketing Practice Act, 15 U.S.C. § 2801 *et seq.* The third alleged the non-renewal as a violation of California law. The fourth alleged alteration of normal business practices and retaliation against Zahir for asserting rights under 10 C.F.R. § 210.62. The fifth charged that Shell and Saberi conspired to interfere with Zahir's business, and destroy it.

The court disposed of each claim by summary judgment. As to the first, it held for Zahir, that he was entitled to damages for Shell's failure to deliver gasoline from July 16, 1979 to November 17, 1979. The amount, lost profits, was stipulated at $48,251.00. The court denied treble damages, attorney's fees, and pre-judgment interest. The second and third claims were denied because they were barred by the Federal and State one year statutes of limitations. (15 U.S.C. § 2805(a)(1); Cal.Bus. & Prof. Code § 20999.3(b).) The fourth claim was denied because Zahir showed no damages from the facts alleged. The fifth was dismissed for lack of Federal jurisdiction. The court "remanded" it to the state court, but this could not be done because it had never been pending in state court. The effect was to dismiss.

Shell counterclaimed against Saberi for indemnity against Zahir's claims, and the court granted summary judgment against Saberi for the amount of Zahir's judgment against Shell. The court's order recites that Shell's motion is "GRANTED on the basis of the express written indemnity set forth in Saberi's attorney's letter to Shell dated October 2, 1979, and Saberi is ordered to reimburse Shell for any damages arising from Shell's violation of the EPAA other than punitive damages for which Shell is held liable herein to plaintiff and for Shell's costs incurred in defending this action."

Saberi and Sabek, Inc., his corporation, counterclaimed against Zahir. This claim was for $90,000 lost profits during the period July 3, 1979 to January 1, 1980. The court entered summary judgment for Zahir on this claim.

We now consider each appeal in turn.

### III. *Shell's Appeal, No. 9–70.*

Shell argues first that Zahir had no right to Shell gasoline under the Act. It contends that Saberi did not in fact transfer the entire business of the franchise to Zahir, and that if he did, such a transfer was prohibited by the Shell-Saberi agreement. There remains no genuine issue of fact, however, as to whether Saberi transferred his entire business to Zahir. Their agreement makes that clear. Moreover, Shell implicitly consented to the transfer by doing business with Zahir after it had notice that he was in fact in charge.

■ Shell's principal argument in support of its appeal from Zahir's judgment is that it has been determined in the California action in unlawful detainer that Zahir's possession of the station was illegal from July 3, 1979 on, and that therefore Zahir had no right to receive an allotment of gasoline from Shell after that date. This argument must be rejected, on the authority of our decision in *Rossi v. Mobil Oil Corp.*, Em.App., 1983, 710 F.2d 821. There we held that a wholesaler-supplier, such as Shell, could discontinue supplying a retailer in possession of a service station only when the state court entered its judgment in an action against the retailer in unlawful detainer. On the question of retroactivity of the state court judgment, *Rossi* is squarely in point.

There is one material respect, however, in which that case differs from this one. In *Rossi*, Mobil Oil owned the gasoline station and Rossi and Siemer were its tenant. There was no question that they were in possession of the station. Here, however, Shell had no interest in the station, and Saberi and Zahir were vying with each other for possession. We hold that under these circumstances, the rule in *Rossi* requires Shell to continue to supply the dealer in possession of the franchise during the dispute over possession. Therefore, Shell was obliged to continue supplying Zahir as long as he remained in possession. Saberi's July 13 letter, asking Shell to stop delivering gasoline to the station, was not a valid basis for Shell to stop while Zahir remained in possession.

However, when Saberi took possession of the station on August 23, 1979, it was not improper for Shell to supply him with gasoline. Under his contract with Shell, he was Shell's franchisee, and Shell had a duty, under the Act and regulations, to supply him when he was in possession. Saberi remained in possession until September 16, 1979. Thus it was error to hold that Shell violated its duty to Zahir from August 23 to September 16.

We limit our holding as to Zahir's and Saberi's rights arising from possession to a case such as this, where each had a colorable legal claim to possession, Saberi's under his contract with Shell, Zahir's under his contract with Saberi. We put to one side Shell's parade of horribles, such as the claim of a stranger who ousts both Saberi and Zahir by force. It will be time enough to face such an issue when and if it ever arises.

■ Shell argues that even if Zahir had a right to be supplied by Shell, he lost that right when he went out of business sometime in July 1979. *See* 10 C.F.R. §§ 211.-11(c) and 211.106(c). But if Zahir stopped operating the station in July only because he was unable to obtain gasoline from Shell, he did not lose his right to that gasoline by "going out of business" within the meaning of those regulations. To hold otherwise would enable Shell to turn its breach of its duty into a lawful act by reason of its almost inevitable effect. A gasoline station cannot operate successfully without gasoline. And in a time of shortage, a station operator who is cut off by his supplier has little chance, if any, to obtain gasoline elsewhere.

■ There is a question, which we think cannot be settled on the record before us by summary judgment, whether, during the period July 16 to August 23, Zahir voluntarily abandoned the station and left the country, and if so, when he did so. If he did so for reasons of his own, rather than because Shell was not supplying him with gasoline, he would not be entitled to damages from Shell for not supplying him with gasoline while he had voluntarily abandoned or

closed the station. *See* 10 C.F.R. §§ 211.11 and 211.106(c). This would result even if he did not abandon the station, but closed it temporarily while he went abroad. Again, however, if the closing was because he could not get gasoline from Shell, not because he was going abroad, Shell would be liable.

■ In addition, there is evidence in the record that Zahir and Saberi agreed, on September 16, that the station would be closed until the contest over possession could be decided in court. If that was the agreement, Shell would have been under no duty to supply gasoline to Zahir while the station remained thus closed.

Similarly, if Saberi prevented Shell from delivering gasoline to Zahir on November 1, Shell should not be liable to Zahir for that non-delivery. We do not think that our decision in *Rossi* requires that a wholesaler-supplier be whipsawed between two parties, each of whom claims to be in possession of a service station over which the supplier has no control. The supplier can deliver to whichever party is in physical possession without fear of being later held liable to the other, so long as it acts in good faith. The supplier should not be faulted for failure to deliver when one of the contestants prevents it.

We conclude that, for the period from August 23 to September 16, Shell did not violate Zahir's rights. The damages awarded must be reduced accordingly. We also conclude that, as to the periods from July 16 to August 23, and from September 16 to November 17, 1979, there are factual questions that must be determined by the trial court. Depending on what that court decides, the damages may have to be further reduced.

### IV. *Zahir's Appeal, No. 9–71.*

■ Zahir raises several points. He asks for attorney's fees under the Economic Stabilization Act, § 210(b), 12 U.S.C. § 1904, Note. That section provides that the court "may, in its discretion" award attorney's fees. We find no abuse of discretion here. Shell was caught, without its fault, between two contending parties. Under the circumstances, it was well within the court's discretion to deny the request for fees.

Zahir also asked for treble damages under § 210(b). The trial court held that the remedy was barred by the statute of limitations. We need not reach the question. In *Rossi, supra,* 710 F.2d at 833, we held that treble damages are not available in an action for failure to allocate, but are available only in an action for overcharges. This is not an action for overcharges.

■ Zahir argues that he is entitled to pre-judgment interest on his judgment against Shell. He cites *Rodgers v. United States,* 1947, 332 U.S. 371, 68 S.Ct. 5, 92 L.Ed. 3, *Hodgson v. American Can Company,* 8 Cir., 1971, 440 F.2d 916, and our decision in *United States v. Arizona Fuels,* Em.App., 1980, 638 F.2d 239, as well as several district court cases. He also relies on § 210(b) of the Economic Stabilization Act, *supra,* but our decision in *Rossi, supra,* precludes reliance on that section here.

We are cited to no provision of any statute requiring an award of pre-judgment interest here. As the court said in *Hodgson, supra,* 440 F.2d at 922:

> In the absence of an unequivocal prohibition of interest, and where the statute imposes a money obligation, the power of the court to award interest is dependent on an appraisal of the congressional purpose of imposing the obligation and on the relative equities of the parties. *Rodgers v. United States,* 332 U.S. 371, 68 S.Ct. 5, 92 L.Ed. 3.

In *Rodgers, supra,* an award of pre-judgment interest on statutory penalties payable to the government was reversed. In *Hodgson* an award of pre-judgment interest to employees, from whom wages were wrongfully withheld in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.,* was upheld. In *Arizona Fuels, supra,* it does not appear whether the interest award was prejudgment, but we assume that it was. However, in both *Hodgson* and *Arizona Fuels,* equity favored an award of pre-judgment interest. In both cases, the failure to pay was willful, and in neither was the defendant caught in a cross-fire,

not of its making, between conflicting claimants. Equity would not be served by an award of prejudgment interest to Zahir in this case.

Moreover, Zahir's claim is not for a liquidated or readily liquidatable sum, as were the claims in *Hodgson* and *Arizona Fuels.* Pre-judgment interest is not appropriate in such a case. *Eastern Airlines, Inc. v. Atlantic Richfield Company,* Em.App.1983, 712 F.2d 1402, 1410. Certainly the trial court did not abuse its discretion in declining to award it here. *See Abell v. Anderson,* 6 Cir., 1945, 148 F.2d 372, 375.

Zahir argues that it was error to dismiss his fifth claim. That claim is a state claim, and the court had only pendent jurisdiction. Under the circumstances, the court did not abuse its discretion. *United Mine Workers of America v. Gibbs,* 1966, 383 U.S. 715, 726–727, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218.

### V. Saberi's & Sabek, Inc.'s Appeal, No. 9–72.

■ We first consider Saberi's appeal from the judgment requiring him to indemnify Shell for the damages claimed by Zahir for Shell's failure to deliver gasoline to Zahir. The court based the judgment on the October 2, 1979 letter of Saberi's counsel, quoted *supra,* pages 4–5. Saberi first argues that Shell never accepted the offer of indemnity. The trial judge correctly held that Shell accepted the offer by acting upon it.

■ Saberi also argues that the intention of the parties was more limited than the language of the letter regarding indemnity appears to provide. But Saberi offered only a declaration by his lawyer as to what he intended, nothing showing that his intent was communicated to Shell, much less what Shell's intent was. In such a case, the trial court could properly rely on the express language of the letter, as it did. *See Rossmoor Sanitation, Inc. v. Pylon, Inc.,* 1975, 13 Cal.3d 622, 632, 119 Cal.Rptr. 449, 532 P.2d 97; *National Union Fire Ins. Co. v. Argonaut Ins. Co.,* 9 Cir., 1983, 701 F.2d 95, 97. The trial court did not err.

To the extent that, on remand, the damages awarded to Zahir against Shell are reduced, Shell's judgment against Saberi should be correspondingly reduced.

Saberi and Sabek, Inc. argue that it was error to grant summary judgment against them on their counterclaim against Zahir for loss of profits from the station during the period in controversy. The court granted summary judgment on the ground that the judgment in the unlawful detainer action afforded compensation to Saberi and Sabek against Zahir. We note also that the parties to that action also settled their differences and executed a release. It was not error to grant the summary judgment for Zahir.

### VI. Decision.

In No. 9–70, we vacate the judgment appealed from and remand for further proceedings.

In No. 9–71, we affirm the parts of the judgment appealed from.

In No. 9–72, we vacate the judgment of Shell against Saberi and remand for further proceedings. We affirm the judgment of Zahir against Saberi and Sabek, Inc. on the latter's counterclaim.