506

The UNITED STATES of America, United States Department of Energy, and John S. Herrington, Secretary of Energy, Plaintiffs–Appellees,

v.

LADD PETROLEUM CORPORATION, Defendant–Appellant.

No. 5–124.

Temporary Emergency Court of Appeals.

Argued Jan. 4, 1988.

Decided Feb. 29, 1988.

Richard F. Ahern, with whom Don W. Crockett, Economic Regulatory Admin., Dept. of Energy, Washington, D.C., and Richard Willard, Dept. of Justice, Civil Div., Washington, D.C., were on the brief, for plaintiffs-appellees.

B.J. Duplantis, with whom Margaret D. Swords, Gordon, Arata, McCollam, Stuart & Duplantis, Lafayette, La., was on the brief, for defendant-appellant.

Before GARZA, Chief Judge, and BROWN and THORNBERRY, Judges.

WESLEY E. BROWN, Judge.

The Department of Energy brought this action to recover alleged overcharges by Ladd Petroleum on sales of crude oil. The action was brought pursuant to Section 209 of the Economic Stabilization Act of 1970, 12 U.S.C. Sec. 1904, note.[1] The Government alleged that Ladd incorrectly classified sales of oil from a certain well as "newly discovered crude oil," and thereby obtained a higher price for the oil than should have been allowed under the DOE's Mandatory Petroleum Price Regulations. (10 C.F.R. Part 212 (1979)).

The District Court granted the Government's motion for summary judgment against Ladd Petroleum, holding that Ladd had overcharged customers in 1979 and 1980 on sales of oil from Ladd's "LL & E No. 1" well. The court also ordered Ladd to pay prejudgment interest on the over-

1. The Economic Stabilization Act (ESA) was incorporated into the Emergency Petroleum Allo-cation Act of 1973, 15 U.S.C. Secs. 751–760h.

charges.[2] Ladd now appeals the decision of the District Court, arguing that (1) sales of oil from the LL & E No. 1 well did not violate the DOE's regulation for newly discovered crude oil and (2) the trial judge's award of prejudgment interest in this case constituted an abuse of discretion. For the following reasons, we affirm the judgment of the District Court.

The regulation at issue, with respect to Ladd's first contention, is 10 C.F.R. Sec. 212.79(b) (1979). This section stated that: " 'Newly discovered crude oil' means domestic crude oil which is: ... (2) produced ... from a property from which no crude oil was produced in calendar year 1978." [3] Sales of oil which qualified as "newly discovered" could be sold at unregulated market prices, which were much higher in 1979 and 1980 than the regulated prices for other types of oil. *See generally* 10 C.F.R. Part 212 (1979).

The LL & E No. 1 well was drilled and tested in June of 1978. During well tests, approximately seventy-eight (78) barrels of natural gas condensate, or "test oil",[4] accumulated in test tanks. Ladd Petroleum states that it then had the oil hauled away and "disposed of free of charge." Ladd argues that for a well to have "produced" oil, as that term was used in Sec. 212.79, the oil must have been extracted and then saved for some beneficial use, such as a sale or other transfer for value. Ladd contends that oil was not produced from its well in 1978 since the seventy-eight barrels of oil extracted were disposed of rather than retained for sale. The DOE, on the other hand, argues that oil was produced from the well when it was extracted from the ground.

In July of 1980, the DOE issued Interpretive Ruling 1980–3, which sought to clarify the meaning of the term "produced" in Sec. 212.79(b). The DOE stated:

> The criterion established by Sec. 212.79 is not whether crude oil was produced and sold, produced in commercial quantities or produced pursuant to state production allowables from the property during calendar year 1978. These additional factors were not incorporated into 10 C.F.R. Sec. 212.79 and are not relevant to the determination of whether crude oil production from the property may be certified and sold as newly discovered crude oil.

> \* \* \* \* \* \*

> If crude oil was produced from a property in measurable amounts in calendar year 1978, crude oil production from the property may not be certified and sold as newly discovered crude oil. Even though only 50 barrels of crude oil were produced in well tests from a property in calendar year 1978, for example, crude oil production from the property may not be certified and sold as newly discovered crude oil.

(DOE Ruling 1980–3, 45 Fed.Reg. 48577).

The Temporary Emergency Court of Appeals examined Sec. 212.79 and Ruling 1980–3 in *Seneca Oil v. Department of Energy*, 712 F.2d 1384 (Temp.Emer.Ct.App. 1983). In that case, Seneca was the operator of several wells which were tested in 1978. A quantity of natural gas condensate was extracted during testing of the wells. The test oil was subsequently sold to eliminate the cost of storing it. *Id.* at 1392. The *Seneca* court upheld the validity of Ruling 1980–3, saying that the Ruling was a reasonable interpretation of Sec. 212.79 and, as such, was entitled to deference by the courts. *Id.* at 1398. As a

**2.** Ladd was ordered to pay a total amount of $2,735,691.00. Of this amount, $1,088,391.00 represented the overcharges and $1,665,300.00 represented the interest accumulated through July 6, 1987.

**3.** 10 C.F.R. Sec. 212.79 was amended effective January 1, 1981, to define "newly discovered crude oil" as oil produced from a property where oil was not produced in *commercial quantities* prior to January 1, 1979. This change

was not effective retroactively, however, and does not affect the present action. The DOE's claim in this case only involves sales of crude oil in 1979 and 1980.

**4.** The definition of "crude oil" includes natural gas condensate. *See* 10 C.F.R. Sec. 212.31 (1979); *see also Seneca Oil v. Department of Energy*, 712 F.2d 1384 (Temp.Emer.Ct.App. 1983).

result, the court overturned the District Court's ruling that the Seneca property had not "produced" oil. *Id.* at 1397.

Ladd attempts to distinguish the *Seneca* case by pointing out that the test oil from the Seneca properties was sold, whereas Ladd had the test oil from its well hauled away. Ladd argues that for oil to be "produced," it must be saved from some beneficial use. This argument finds no support in Sec. 212.79, Ruling 1980–3, or in the *Seneca* case.

In construing the term "produced," we must keep in mind the purpose of Sec. 212.79. That section was enacted as part of the two-tier pricing system of the DOE. The pricing system was designed to control inflation through price controls, but at the same time to provide incentives for increased oil production. *Cities Service Co. v. Federal Energy Administration,* 529 F.2d 1016, 1020 (Temp.Emer.Ct.App.1975), *cert. denied,* 426 U.S. 947, 96 S.Ct. 3166, 49 L.Ed.2d 1184 (1976). Section 212.79(b) was apparently intended to further that policy by providing an economic incentive for operators to risk searching for new sources of crude oil and to resume extraction from wells abandoned before 1978. The incentive did not apply, however, to a property that had produced *any measurable amount* of oil in 1978. DOE Ruling 1980–3, 45 Fed.Reg. 48577. Viewed in this context, it is reasonable to conclude that oil was "produced" once it was extracted from the ground. This definition of produced is consistent with the purpose of Sec. 212.79, since an operator who extracted oil from a well in 1978 already had a proven source of crude oil when the 1979 incentive to search for new sources of crude oil took effect. The operator of such a well should not get the benefit of the Sec. 212.79 incentive, because the operator incurred no risk after the incentive was announced. Since Sec. 212.79 by definition sought to reward operators for *newly discovered* crude oil, the discovery of oil by its extraction affords a rational basis for determining when oil was "produced."

In contrast, there is no rational basis for allowing the economic incentive of Sec. 212.79 for an operator who extracted test oil in 1978 and then decided to dispose of it, but at the same time to deny the incentive for an operator who extracted test oil and then sold it. In both cases oil was produced from the property. Furthermore, Ladd's argument that the sole purpose of the Sec. 212.79 incentive was to encourage increased oil production is unconvincing. Such a construction would render incongruous the exclusion from the incentive of properties that produced oil in 1978.

The definition of "produced" which we adopt is also suggested by DOE Ruling 1980–3. In that Ruling, the DOE stated that it did not matter, for purposes of Sec. 212.79, whether crude oil was "produced *and sold.*" The DOE's example of fifty barrels of oil produced in well tests (*see supra*) also suggests that the *purpose* for which oil was extracted was irrelevant for Sec. 212.79 purposes. Ruling 1980–3 itself was issued in order to limit the application of the newly discovered price incentive. In the Ruling, the DOE stated:

> [S]ome producers have asserted a right to certify as 'newly discovered' the crude oil production of properties from which crude oil was in fact 'produced' during calendar year 1978, based upon an erroneous interpretation of the term 'produced.' Accordingly, we are issuing this Ruling to clarify the meaning of the terms 'property' and 'produced' with respect to the crude oil ceiling price rule.

45 Fed.Reg. 48577. The Ruling makes no mention of storage as a determining factor under Sec. 212.79, and we must reject Ladd's argument that an operator's decision to dispose of test oil could make oil from the well "newly discovered."

Ladd urges the court to hold that only "production" of oil in 1978 would disqualify a well from newly discovered status. Ladd proposes a commercial definition of "production," which Ladd argues only occurs when minerals are saved for some beneficial use, such as a sale, transfer for value or other utilitarian purpose. (Appellant's Brief, p. 8). The definitions of "production" offered by Ladd, however, are in the context of stripper well cases and oil and

gas leases, and are simply inapplicable to the regulation at hand. Furthermore, even if we were to accept Ladd's argument, it is questionable whether oil from Ladd's well would qualify as newly discovered. Ladd states that the test oil from its well was "hauled away and disposed of free of charge." This exchange would seem to make Ladd's disposal of the oil a transfer for value, which would disqualify the property from newly discovered status under Ladd's own definition of "production." We also note that, to the extent "production" differs in meaning from "produced," the issue in this case is whether oil was *produced* from the well. *Compare* Black's Law Dictionary, 4th Ed. at p. 1374 (defining "produce" as "to bring forward.... To bring to the surface, as oil.") *with* Webster's New Collegiate Dictionary at p. 679 (defining "production" as "the creation of utility; ... the making of goods available for human wants.").

Finally, the *Seneca* case upheld Ruling 1980–3 in its entirety and offers no support for Ladd's argument. While it is true that the test oil in *Seneca* was sold by the operator, there is no suggestion that this fact made any difference in the outcome of the case. *Seneca* does not even imply that a distinction should be made between those cases where an operator sold test oil and those cases where the test oil was otherwise disposed of. Ladd is trying to read a distinction into the regulation which does not exist. In short, there is no suggestion in Sec. 212.79, Ruling 1980–3, or in *Seneca* that anything beyond extraction of a measurable amount from the ground was required for oil to be "produced."

▇ Ladd's second contention on appeal is that the trial judge's award of prejudgment interest on the overcharges constituted an abuse of discretion. We find, however, that the award of prejudgment interest was proper in this case.

Ladd argues primarily that interest should not be awarded because of the four-year delay between the date Ladd received notice of a pricing violation and the date this suit was filed. Ladd's argument is contrary to our decision in *Citronelle-Mo-*

*bile Gathering, Inc. v. Herrington,* 826 F.2d 16, 29 (Temp.Emer.Ct.App.1987), where we found that a four-year delay before an action for restitution was filed would not prevent an award of prejudgment interest. Ladd also overlooks the fact that during the four-year period in question, the DOE attempted to recover the overcharges from Ladd. After the *Seneca* case was remanded to the U.S. District Court for the Western District of Oklahoma, the DOE asserted its claim against Ladd in that court because Ladd was a party to the *Seneca* case. In 1985, the Oklahoma court ruled that the DOE could not, under the *Seneca* mandate, recover in Oklahoma District Court for any overcharges on sales from a well located in Louisiana (the LL & E No. 1 well). Shortly thereafter, the DOE filed this action in U.S. District Court in Louisiana. Under these facts, the DOE was clearly not dilatory in asserting its claims against Ladd.

Ladd's argument that an award of prejudgment interest in effect makes Ladd "pay" for its right to due process is without merit. While Ladd certainly had a right to make the DOE prove its claim in court, Ladd does not have the right to retain the benefits of the money which it wrongfully held while the DOE pursued its claim. The Third Circuit stated in a similar case:

> To the extent defendant has had the free use of the income-producing ability of plaintiff's money without having to pay for it, he has been unjustly enriched. To divest him of this unjustified benefit is not to penalize him, for it has been determined by the trial that it was never rightfully his.

*Feather v. United Mine Workers of America,* 711 F.2d 530, 540 (3rd Cir.1983) (citing *Prejudgment Interest as Damages: New Application of an Old Theory,* 15 Stan.L. Rev. 107, 109 (1962). As this court has previously noted, the court's equitable powers permit the court to deprive the wrongdoer of all enrichment obtained at the victim's expense, and that enrichment includes the benefits obtained by having the use over the years of the money illegally ob-

tained. *Herrington*, 826 F.2d at 29 (citing *United States v. Exxon*, 561 F.Supp. 816, 858 (D.D.C.1983), *affirmed at* 773 F.2d 1240 (Temp.Emer.Ct.App.1985), *cert. denied*, 474 U.S. 1105, 106 S.Ct. 892, 88 L.Ed. 2d 926 (1986).

The trial court has some discretion in deciding whether to award prejudgment interest, but we have recognized that under the Economic Stabilization Act of 1970, restitution should make victims whole, unless some compelling reason counsels otherwise. *Herrington*, 826 F.2d at 28. Furthermore, requiring the payment of interest on overcharges is a rational method to "make whole" those who have been overcharged. *Bonray Oil Co. v. Department of Energy*, 472 F.Supp. 899, 902 (W.D.Okla. 1978), *affirmed per curiam* 601 F.2d 1191 (Temp.Emer.Ct.App.1979). The rate of interest applied by the trial court in this case was taken from the DOE's rate schedule, which is used by the DOE in administrative enforcement actions. We have recognized on previous occasions that this schedule should be applied to overcharges under the ESA unless there are compelling reasons for not doing so. *See Herrington*, 826 F.2d at 30; *United States v. Exxon*, 561 F.Supp. 816, 858 (D.D.C.1983) *affirmed at* 773 F.2d 1240, 1279 (Temp.Emer.Ct.App. 1985). Accordingly, the rate of interest selected by the trial court was proper in this case.

Indeed, as we stated in the *Lea* case, decided the same day as *Ladd Petroleum*, the DOE rate schedule must be applied in order to ensure uniformity in cases decided under the ESA. *See Lea Exploration v. Department of Energy*, 843 F.2d 510 (Temp.Emer.Ct.App.1988).

In light of these holdings, Ladd's argument that the trial court erred by awarding prejudgment interest cannot stand. The trial court correctly determined that no compelling circumstances exist which would relieve Ladd from paying prejudgment interest.

AFFIRMED.