In re The DEPARTMENT OF ENERGY STRIPPER WELL EXEMPTION LITIGATION.

MOBIL OIL CORPORATION, et al., Plaintiffs,

v.

UNITED STATES DEPARTMENT OF ENERGY, et al., Defendants.

M.D.L. 378.
Civ. A. No. 78–1070.

United States District Court,
D. Kansas.

Aug. 25, 1989.

## OPINION AND ORDER

THEIS, District Judge.

This case is before the court on cross motions for summary judgment. Defendant Department of Energy (DOE) has moved for summary judgment on its counterclaim against plaintiff Mobil Oil Corporation (Mobil). DOE requests that the court enter an order requiring Mobil to deposit into the escrow account established by the court the sum of $10,214,510 plus interest accruing after March 31, 1989 through the date of payment. Mobil opposes DOE's motion and seeks summary judgment in its favor on DOE's counterclaim. The court has considered the briefs, including the brief filed by third party defendant Sun Company, Inc. (Sun), heard oral argument on the motions, and is now prepared to rule.

## I. INTRODUCTION AND BACKGROUND

The court previously denied DOE's motion to sever its claim from Mobil's claims against the third party defendants. In the order denying the motion to sever, the court noted that it was retaining the discretion to sever at any time and proceed with DOE's claim against Mobil. Dk. No. 1625, at p. 4, 1989 WL 65609 (May 31, 1989). The court will now sever DOE's claim from the remaining claims in Civil Action No. 78–1070. The court has determined that DOE's claim against Mobil may be resolved independently of the claims remaining in this action.

A brief history of this litigation is in order. M.D.L. 378 is a consolidation of a number of cases brought by oil producers to enjoin the Federal Energy Administration, now the DOE, from enforcing Ruling 1974–29. This Ruling, and the regulations it interpreted, required the exclusion of injection wells from the well count in calculating the average daily production per well for qualification for the stripper well exemption from price controls. This court enjoined enforcement of the regulations in question, but ordered the plaintiff oil producers to deposit into escrow the difference between the stripper well price and the controlled price of crude oil affected by the injunction.

The Temporary Emergency Court of Appeals (TECA) upheld the validity of the regulations and Ruling 1974–29 in *In re The Department of Energy Stripper Well Exemption Litigation*, 690 F.2d 1375 (TECA 1982), *cert. denied sub nom. Energy Reserves Group, Inc. v. Hodel*, 459 U.S. 1127, 103 S.Ct. 763, 74 L.Ed.2d 978 (1983) [hereinafter *Stripper Well Exemption Litigation*]. Pursuant to TECA's mandate, the court entered judgment for DOE. At that point, the court considered the action to be, in effect, a government enforcement action under § 209 of the Economic Stabilization Act (ESA), 12 U.S.C. § 1904 note, in which the fact of overcharge had been determined and the court was faced with effecting restitution. *See Stripper Well Exemption Litigation*, 578 F.Supp. 586, 593 (D. Kan.1983).

Following negotiations among the parties as to the proper distribution of the escrowed overcharge funds, the parties reached a settlement. The court approved the Final Settlement Agreement (FSA) on July 7, 1986. *See Stripper Well Exemption Litigation*, 653 F.Supp. 108 (D. Kan. 1986). The FSA did not resolve the issue of any remaining liability of the parties for payment of overcharge funds into escrow. The parties to M.D.L. 378 specifically reserved their rights to litigate the issue of remaining liability for overcharges. FSA

¶ II.A.6. A number of parties have settled their liability for overcharges with DOE and have paid funds into the court's escrow for distribution via the mechanism set up by the FSA.

In September 1988, the United States of America filed a counterclaim on behalf of DOE against the remaining parties, pursuant to §§ 209 and 211 of the Economic Stabilization Act (ESA), 12 U.S.C. § 1904 note, as incorporated into section 5(a)(1) of the Emergency Petroleum Allocation Act (EPAA), 15 U.S.C. § 754(a)(1). The DOE's counterclaim alleges that the remaining parties have not deposited sufficient funds into the court's escrow to satisfy their overcharge liability. Dk. No. 1447. DOE now seeks summary judgment on its counterclaim against Mobil.

In the present case, Mobil has filed a third party complaint against the State of Oklahoma, the Oklahoma Tax Commission, Sun Company, Inc., Koch Industries, Inc., and Kerr–McGee Corporation. Mobil's third party complaint seeks a money judgment against the State of Oklahoma and the Oklahoma Tax Commission and, in the event DOE prevails on its counterclaim, Mobil seeks to hold the remaining third party defendants liable for any payments Mobil is required to make. Dk. No. 1493.

According to Mobil's memorandum in support of its motion for summary judgment and in opposition to DOE's motion for summary judgment, the funds which DOE seeks fall into five categories: (1) severance taxes paid by Mobil as first purchaser to the State of Oklahoma that have not been refunded to Mobil for which DOE claims principal and interest at DOE policy rates; (2) severance taxes paid by Sun as first purchaser to the State of Oklahoma that were refunded with interest at Oklahoma statutory interest rates and paid into the escrow for which DOE claims interest at DOE policy rates; (3) Oklahoma severance taxes, paid or retained by Koch and Kerr–McGee as first purchasers, that have not been remitted to Mobil for deposit to the escrow, for which DOE claims principal and interest at DOE policy rates; (4) Texas and New Mexico severance taxes that were

refunded to Mobil without interest and were deposited in the escrow for which DOE claims interest at DOE policy rates; and (5) additional interest on certain delayed deposits, including Wyoming severance taxes, for which Mobil acknowledges responsibility and has offered to pay with interest at rates comparable to the escrow rate. Dk. No. 1561.

The present dispute arises out of the following factual situation. On September 6, 1978, the court granted Mobil's motion for preliminary injunction. The court enjoined DOE from enforcing Ruling 1974–29 against Mobil, thus enabling Mobil to charge the higher stripper well price for crude oil from certain properties which would not otherwise qualify for the stripper well exemption from price controls. The court additionally ordered Mobil to pay to the clerk of this court "the difference between the price received for crude oil sold pursuant to any and all certifications of a property as a stripper well property and the price for which such crude oil would have been sold had the same been sold pursuant to a certification of the property as a non-stripper property." *Mobil Oil Corp. v. Department of Energy*, No. 78–1070 (D. Kan. Sept. 6, 1978).

During the litigation of the validity of the stripper well regulations and Ruling 1974–29, the first purchasers of the crude oil remitted severance taxes on the incremental value of the oil to the states where the oil was produced. Mobil then deposited into escrow the net, after-tax difference between the stripper well price and the controlled price for the crude oil affected by the injunction. Mobil has obtained refunds of some of the severance taxes and has deposited those funds into the escrow. DOE's motion seeks to hold Mobil responsible for depositing into escrow the entire differential between the stripper and controlled prices, plus interest at DOE's policy rates.

## II. SUMMARY JUDGMENT STANDARDS

The Federal Rules of Civil Procedure provide that summary judgment is appro-

priate when the documentary evidence filed with the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, ..." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The burden at the summary judgment stage is similar to the burden of proof at trial. The court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact on its claim(s). Rule 56, however, imposes no requirement on the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323, 106 S.Ct. at 2553 (emphasis in original). Each party must demonstrate to the court the existence of contested facts on each claim it will have to prove at trial. *Id.* at 324, 106 S.Ct. at 2553. The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden the party will face at trial on the particular claim. *Anderson,* 477 U.S. at 254, 106 S.Ct. at 2513.

## III. STATEMENT OF FACTS

DOE has supported its motion for summary judgment with a statement of uncontroverted facts as required by D.Kan. Rule 206(c). Mobil specifically does not dispute the arithmetical accuracy of the calculations appearing as Exhibit 29 to the Affidavit of Buford A. Shively, the DOE auditor who calculated the total amount of overcharges which DOE is seeking. The remainder of Mobil's response to DOE's statement of facts is cluttered with legal conclusions, immaterial facts, and unsupported factual allegations. The court will address Mobil's contentions following each of the DOE's factual statements. For the purposes of DOE's motion for summary judgment, the following material facts are uncontroverted.

1. Mobil certified and sold crude oil produced from 28 properties as stripper well crude oil based on the inclusion of injection wells. Mobil does not dispute this statement. Mobil does dispute the statement contained in DOE auditor Shively's affidavit that Mobil "miscertified" the oil. This semantic argument carries little weight. Once the appeals were over in this case, it was established that the properties at issue did not qualify for certification as stripper well properties. Thus, any properties certified as stripper under the protection of this court's injunction were "miscertified."

2. Mobil's overcharges occurred during each month of the period from June 1978 through the end of January 1981, and totalled $63,398,480. Mobil's attempts to controvert this statement are unsuccessful. Mobil disputes the use of the word "overcharge." Section 209 of the ESA authorizes the DOE to seek restitution for "moneys received in violation of" any regulation or order. Mobil's argument that it only "received" an amount net of taxes (which was paid into escrow) and did not "receive" the gross amount is a legal argument which shall be addressed in this opinion. Mobil also disputes the starting date of June 1978. The referenced portion of the affidavit of R.R. Bates (¶ 7 and Exhibits 16–18 attached thereto), submitted by Mobil in support of its motion and in opposition to DOE's motion, does not address the time when Mobil certified the properties as stripper, began charging the stripper price, or began making payments into escrow. Mobil disputes the total amount of overcharges calculated by DOE, stating that one of the exhibits to DOE auditor Shive-

ly's affidavit contains an error of $12,-002.35. Mobil asserts that it has reason to believe that other calculation errors exist. Mobil initially provided no support for this allegation of error. Mobil later submitted a supplemental affidavit from R.R. Bates. Dk. No. 1638. This affidavit was not made on personal knowledge, in violation of D.Kan. Rule 206(c), and is insufficient to create an issue of fact regarding the alleged $12,002.35 error. This unsupported allegation of one error is insufficient to call into question the accuracy of all of DOE's computations.

3. Deposits into the escrow account for Mobil's overcharges commenced in October 1978. Interest had already accrued on overcharges that had occurred in June, July, and August 1978, which Mobil disputes. However, the court believes the issue of prejudgment interest is one of law.

4. The amounts deposited for Mobil's overcharges were less than the amounts of overcharges outstanding at the time of each deposit. Additional interest accrued during the remainder of the overcharge period on these unpaid overcharge amounts. Mobil attempts to dispute this by making several legal arguments. Whether any overcharges occurred and the propriety of charging prejudgment interest are questions of law.

5. Application of a portion of each deposit to pay the accrued interest resulted in only the residual amount of the deposit being applied to the overcharges. Mobil disputes DOE's allocation of deposits to accrued interest since it asserts no interest should be allowed. The issue of prejudgment interest is for the court. Mobil does not dispute the mathematical accuracy of DOE's computations in this regard.

6. The escrow deposits for Mobil's overcharges totalled $58,675,677, and its unpaid overcharges totalled approximately $6,519,-000, as of April 1981. The first portion of this statement is uncontroverted. Mobil disputes the second half of this statement. Mobil offers no support for its assertion that DOE has committed calculation errors in its schedules. Mobil's liability for the portion of the overcharges which Mobil at-

tributes to state severance taxes is a question of law.

7. Subsequent to that time, interest has continued to accrue on unpaid amounts that have remained outstanding. Escrow deposits were made during the months of July 1981, May 1982, October 1983, August 1985, October 1985, and February 1989, and each was sufficient to pay only a portion of the total amount outstanding at the time of the payment. Mobil does not dispute that escrow deposits were made during the specified months. Mobil attempts to dispute the remaining statements, but has provided the court with no support. The court believes that whether interest has continued to accrue and at what rates are questions of law.

8. Using the interest rates set forth in DOE's Policy Statement on Interest, 46 Fed.Reg. 21,412 (April 10, 1981), and using the United States Rule that deposits are applied first to interest, the remaining deficiencies with interest as of March 31, 1989 total $10,214,510. Mobil does not dispute the arithmetical accuracy of the calculations. The questions of the appropriate rate of interest and the application of the United States Rule are questions of law.

IV. RESTITUTION FOR OVER-CHARGES

*A. Timeliness of Counterclaim*

Mobil asserts that the counterclaim filed in September 1988 is untimely. Mobil argues that any government claim for restitution under § 209 of the ESA was a compulsory counterclaim which should have been raised in 1978 when DOE answered Mobil's complaint. Fed.R.Civ.P. 13(a). Section 209 of the ESA provides:

Whenever it appears to any person authorized by the President to exercise authority under this title that any individual or organization has engaged, is engaged, or is about to engage in any acts or practices constituting a violation of any order or regulation under this title, such person may request the Attorney General to bring an action in the appropriate district court of the United States

to enjoin such acts or practices, and upon a proper showing a temporary restraining order or a preliminary or permanent injunction shall be granted without bond. Any such court may also issue mandatory injunctions commanding any person to comply with any such order or regulation. In addition to such injunctive relief, the court may also order restitution of moneys received in violation of any such order or regulation.

12 U.S.C. § 1904 note, as incorporated into the Emergency Petroleum Allocation Act of 1973, 15 U.S.C. §§ 751–760h. The court does not believe that a counterclaim for restitution of overcharges was compulsory when DOE answered Mobil's complaint for declaratory judgment. At that time, there were no overcharges.

The validity of the Ruling and the regulations it interpreted was in question during this litigation. This court invalidated the regulations, but was reversed on appeal. *Stripper Well Exemption Litigation*, 520 F.Supp. 1232 (D.Kan.1981), *rev'd*, 690 F.2d 1375 (TECA 1982), *cert. denied sub nom. Energy Reserves Group, Inc. v. Hodel*, 459 U.S. 1127, 103 S.Ct. 763, 74 L.Ed.2d 978 (1983). At this point, this court considered the fact of overcharge to have been established. *Stripper Well Exemption Litigation*, 578 F.Supp. at 593. Subsequently, the plaintiffs moved to certify three constitutional questions to TECA. *See id.* at 597–601. TECA upheld the constitutionality of the Emergency Petroleum Allocation Act and the Energy Policy and Conservation Act in *Exxon Corp. v. Department of Energy*, 744 F.2d 98 (TECA), *cert. denied sub nom. Energy Reserves Group, Inc. v. Department of Energy*, 469 U.S. 1077, 105 S.Ct. 576, 83 L.Ed.2d 515 (1984). All potential avenues of appeal having been exhausted, the fact of overcharge was finally established on December 3, 1984, upon the United States Supreme Court's denial of the writ of certiorari on the constitutional challenge. DOE's claim for restitution accrued at this time. DOE's delay in filing the counterclaim until September 1988 is not fatal to the claim. *See United States v. Ladd Petroleum*, 843 F.2d 506, 509 (TECA 1988) (citing *Citronelle–Mobile*

*Gathering, Inc. v. Herrington*, 826 F.2d 16, 29 (TECA), *cert. denied sub nom. Chamberlain v. United States*, 484 U.S. 943, 108 S.Ct. 327, 98 L.Ed.2d 355 (1987)) (in both cases, four year delay before government filed suit not fatal to claim for restitution with prejudgment interest at DOE policy rates).

*B. Sufficiency of Counterclaim*

Mobil argues, citing *Jennings Oil Co. v. Mobil Oil Co.*, 80 F.R.D. 124, 127 (S.D.N.Y. 1978), that the counterclaim should be dismissed for failure to allege that it arises under ESA § 209. Mobil's contention is incorrect, since DOE's counterclaim does allege that it arises under ESA § 209. Dk. No. 1447, at p. 9. Further, in contrast to the situation presented in *Jennings Oil*, in the present action Mobil is well aware of the basis of the counterclaim and cannot plead ignorance of the specific statutes, regulations, and Ruling upon which DOE bases its claim.

Mobil asserts that DOE cannot counterclaim for additional amounts as restitution over and above the security given for the injunction, unless the benefit to Mobil from the injunction exceeded the security given. Mobil asserts that it has already paid into escrow the entire amount of the benefit it received from the injunction which allowed it to charge the stripper price. This does not answer the question of whether Mobil paid the correct amount into escrow as security for the injunction. Several of the cases cited by Mobil establish the sufficiency of the DOE's counterclaim. The appropriate measure of restitution is the excess rates charged (not just the benefit received) pursuant to an injunction against the enforcement of an administrative order. *See Ex parte Lincoln Gas & Electric Light Co.*, 256 U.S. 512, 517, 41 S.Ct. 558, 560, 65 L.Ed. 1066 (1921); *Middlewest Motor Freight Bureau v. United States*, 433 F.2d 212, 228 (8th Cir.1970), *cert. denied*, 402 U.S. 999, 91 S.Ct. 2169, 29 L.Ed.2d 165 (1971).

*C. Nature of the Counterclaim*

DOE's counterclaim potentially arises under the Final Settlement Agreement, the

court's injunction and escrow order, or ESA § 209. The court will discuss each of these in turn.

Mobil argues that DOE's claim, if any, arises under the FSA and authorizes suit by DOE directly against the third party defendants. In response to DOE's assertion that the counterclaim arises under ESA § 209, Mobil takes issue with what it sees as the creation of a remedy not expressly contemplated by the FSA. Mobil quotes the following provisions of the FSA:

> [A]ll Parties are bound by the terms of this Agreement and agree to be bound by an order of the District Court ... enforcing the Agreement.
>
> ....
>
> Any Party may enforce this Agreement against any other Party....

FSA ¶¶ II.A.1, VI.B. Mobil asserts that these provisions authorize the court to order the third party defendants to pay moneys directly into the escrow.

Mobil fails to refer to the following provision of the FSA:

> Nothing in this Agreement may be read to enlarge, abridge, limit or otherwise affect the ability of the parties to M.D.L. 378 to litigate the issues remaining in M.D.L. 378 concerning the determination and collection of the amount of remaining liability, if any, of any party to M.D.L. 378 for counting injection wells to qualify a property as a stripper well property, or to seek the imposition of sanctions for failure to comply with proper discovery requests.

FSA ¶ II.A.6. The flaw in Mobil's position, that the FSA authorizes the court to impose liability on various entities, is that the FSA did not address the issue of the monetary liability to the escrow of any of the parties. *Id.* Sun states in its brief that the FSA "imposed an implicit equitable duty" upon various entities to make the escrow whole. Dk. No. 1556, at p. 13. Sun at least recognizes that no provision of the FSA imposes liability for restitution for overcharges.

The portion of FSA ¶ II.A.1 which Mobil does not quote in its brief points out one of the flaws to its assertion that the third party defendants should be held liable directly to the escrow. Paragraph II.A.1 provides in full:

> By execution of or becoming Parties to this Agreement, and subject to Paragraph VI.F, the Parties intend to compromise and settle all claims to the funds in escrow in M.D.L. 378 and any additional funds which are subsequently deposited therein (hereinafter the M.D.L. 378 Escrow), and the funds attributable to injection well issues which were paid by Amoco to DOE on February 1, 1985, in compliance with the February 14, 1980 Amoco consent order, plus interest accrued through the date of disbursement pursuant to this Agreement (hereinafter the DOE/Amoco Stripper Fund). The Parties agree to use their best efforts to obtain approval of this Agreement by the U.S. District Court for the District of Kansas (hereinafter the District Court) and distribution of the M.D.L. 378 Escrow in accordance with this Agreement as expeditiously as possible. *A Party who is not otherwise a party to M.D.L. 378 shall not become or be considered a party to M.D.L. 378 by reason of having executed this Agreement nor shall execution hereof be probative of making any Party a party to M.D.L. 378,* although all Parties are bound by the terms of this Agreement and agree to be bound by an order of the District Court approving and enforcing the Agreement.

FSA ¶ II.A.1 (emphasis added). In other words, parties to the FSA did not become parties to M.D.L. 378 if they were not already parties to this action. The FSA does not subject nonparties to M.D.L. 378 to the jurisdiction of this court. Further, since the FSA did not impose liability on any party, but reserved that matter for litigation, the FSA cannot support DOE's counterclaim.

■ DOE's claim potentially arises under the court's injunction and escrow order, to recover deficiencies in payments to the escrow. The Preliminary Injunction issued by by court in favor of Mobil provided, in part:

IT IS FURTHER ORDERED that the Plaintiffs shall pay, or cause to be paid, to the Clerk of the United States District Court for the District of Kansas, at Wichita, Kansas, the difference between the price received for crude oil sold pursuant to any and all certifications of a property as a stripper well property and the price for which such crude oil would have been sold had the same been sold pursuant to a certification of the property as a non-stripper property.

. . . .

IT IS FURTHER ORDERED that the foregoing provisions concerning payment of funds to the Clerk of this Court fully satisfy the requirement for security for a preliminary injunction, as provided in Rule 65(c) of the Federal Rules of Civil Procedure.

*Mobil Oil Corp. v. Department of Energy,* No. 78–1070 (D.Kan. Sept. 6, 1978).

Mobil asserts that DOE cannot pursue a counterclaim because Mobil has fully complied with the terms of the injunction by depositing all sums into the escrow account that it actually received. The issue before the court is whether Mobil fully complied with the injunction by depositing sufficient funds into escrow.

The court believes that DOE's counterclaim arises under § 209 of the ESA. The counterclaim does refer to § 209, which authorizes the government to seek restitution of moneys received in violation of the stripper well regulations. The court has previously stated that it considers this action to be, in effect, a government enforcement action under ESA § 209, in which the fact of overcharge had been determined. *Stripper Well Exemption Litigation,* 578 F.Supp. at 593. The court also stated that the present action "is fundamentally different from a private enforcement action ... under Section 210 of the Economic Stabilization Act." *Id.* at 592–93. Sun argues in its brief that this action is similar to a government enforcement action under § 209 as to the remedy only (restitution) and not as to liability. The court does not believe that the issue of liability under

§ 209 can be divorced from the statutory remedy of restitution.

The court believes that the government's counterclaim properly states a claim under ESA § 209 for the restitution of overcharges. Even if this action is not a true § 209 action, it is more analogous to a § 209 action than to anything else. For that reason, the court shall rely on ESA § 209 cases in determining Mobil's liability.

*D. Restitution Standards*

■ The Temporary Emergency Court of Appeals (TECA) has stated in several cases that restitution is a remedy by which the defendant is made to disgorge illgotten gains, or to restore the status quo, or to accomplish both objectives. *Kern Oil & Refining Co. v. Tenneco Oil Co.,* 868 F.2d 1279, 1282 (TECA 1989); *United States v. Exxon Corp.,* 773 F.2d 1240, 1278 (TECA 1985), *cert. denied,* 474 U.S. 1105, 106 S.Ct. 892, 88 L.Ed.2d 926 (1986); *Sauder v. Department of Energy,* 648 F.2d 1341, 1348 (TECA 1981). It is not necessary that there be both unjust enrichment and injury to third parties before restitution may be ordered. *United States v. Sutton,* 795 F.2d 1040, 1061 (TECA 1986), *cert. denied,* 479 U.S. 1030, 107 S.Ct. 873, 93 L.Ed.2d 828 (1987). Thus, it is not necessary to find that the infringer actually received or benefited from the overcharges before ordering restitution. *Citronelle–Mobile Gathering, Inc. v. Herrington,* 826 F.2d 16, 27 (TECA), *cert. denied sub nom. Chamberlain v. United States,* 484 U.S. 943, 108 S.Ct. 327, 98 L.Ed.2d 355 (1987); *Sauder,* 648 F.2d at 1348.

■ Mobil argues that the operator liability doctrine should not be applied to hold it responsible for the full amount of overcharges plus interest which DOE seeks. Under the operator liability doctrine, DOE may hold the operator of a crude oil producing property liable for overcharges attributable to working interest owners on that property. DOE need not seek restitution from each individual working interest owner. *See Sauder,* 648 F.2d at 1347–48.

■ The operator liability doctrine appears to be inapplicable here. The restitu-

tion sought in the present case is for overcharges on oil sold by Mobil pursuant to certifications of the properties as stripper. DOE is not seeking restitution for overcharges on oil sold by the working interest owners on the Mobil-operated properties. It appears that certain working interest owners sold crude oil from Mobil-operated properties at the controlled price, despite the stripper certification. *See* Affidavit of R.R. Bates, Dk. No. 1562, Exh. 13–15.

■ Mobil's third party complaint alleges that Sun and Kerr–McGee were working interest owners on Mobil-operated properties. Mobil's dispute with Sun and Kerr–McGee, however, arises from their position as first purchasers of crude oil from Mobil-operated properties who remitted taxes to the State of Oklahoma. There is no allegation that DOE is seeking to hold Mobil responsible for overcharges caused by working interest owners. Rather, DOE is seeking restitution for overcharges on oil that Mobil itself sold. The court is aware of no authority for Mobil's position that DOE should seek recovery from non-owners, such as the third party defendants in this action, the State of Oklahoma, the Oklahoma Tax Commission, and the first purchasers of the crude oil who remitted the taxes to the State of Oklahoma.

Mobil makes a number of arguments that it has fully satisfied its restitutionary obligations and/or the DOE cannot seek additional funds from it. Mobil asserts that it has made full restitution since it has already paid into the escrow the full amount that it "received" in excess of the controlled price of crude oil (*i.e.*, the net after-tax amount it received from the first purchasers). As the TECA cases cited above make clear, Mobil can be required to make restitution for funds that it did not actually receive. Further, to restore the status quo, Mobil must be required to make restitution of the amounts diverted as taxes. The public was harmed by the entire amount of the stripper price differential, not by just the net after-tax amount.

Mobil asserts that the court's injunction only required the payment of the net after-tax amount because of the wording "the

price received" as stripper less "the price for which such crude would have been sold" as nonstripper. The regulations defined "price" as "any consideration for the sale of any property or services...." 10 C.F.R. § 212.31 (1981). The consideration paid by the first purchasers was the full stripper price. That Mobil never actually received the full amount because the first purchasers remitted the taxes directly to the States does not alter the fact that the price charged and paid was the full stripper price. Further, the court believes that the language "the price received" means the gross selling price, not the net after-tax amount.

Mobil claims that if DOE's motion for summary judgment is granted, it will be subjected to double liability or double taxation, since it has not received a refund from the State of Oklahoma of the severance taxes paid on the enhanced value of the oil. This specific argument was rejected by TECA in *Citronelle*, 826 F.2d 16. There, TECA reversed the district court's deduction of various taxes from the restitutionary award. *Id.* at 29. *See also Lea Exploration, Inc. v. Department of Energy*, 843 F.2d 510, 513 (TECA 1988). This court has previously held that severance tax payments cannot be used to reduce a firm's liability for overcharges. *Atlantic Richfield Co. v. Department of Energy*, No. 79–1204 (D.Kan. Feb. 22, 1985).

There is no requirement that a tax grievance be assured of success before the court may order restitution. Rather, the overcharger may be ordered to make full restitution and told to "pursue its tax grievances with the appropriate agencies." *Lea Exploration*, 843 F.2d at 513; *see Citronelle*, 826 F.2d at 29. A § 209 action is not the appropriate vehicle for the determination of Mobil's rights against third parties. *See United States v. Exxon Corp.*, 773 F.2d 1240, 1279 (TECA 1985), *cert. denied*, 474 U.S. 1105, 106 S.Ct. 892, 88 L.Ed.2d 926 (1986). Additionally, Mobil's liability is not dependent on a finding that Mobil is entitled to contribution from any of the third party defendants. *See id.*

Mobil has admitted that the State of Oklahoma gave it the option, during the litigation of the validity of the stripper well exemption, to pay the entire stripper price differential into the court's escrow. Severance taxes on the price differential would have been due only if the exemption was invalidated, thus authorizing the charging of the stripper price for the oil. Mobil chose not to defer payment of taxes pending the outcome of the litigation. Mobil made its choice for financial reasons and cannot now state that it was required to pay severance taxes to the State of Oklahoma. The court acknowledges that Oklahoma's offer of deferred payment of taxes came several months after Mobil began charging the higher price pursuant to the court's injunction and paying taxes on the increased value of the oil. This fact does not alter the court's conclusion. At the point the State of Oklahoma gave Mobil the option of deferred payment, Mobil was no longer under any compulsion to pay severance taxes. That Mobil's choice now appears to have been the least profitable one does not provide a reason for denying restitution.

■ Mobil's final point is that the Tax Injunction Act bars the court from ordering restitution. That statute provides:

The district court shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1341. Mobil argues that the Tax Injunction Act prohibited this court from enjoining the collection of state taxes. Thus, the court could not have ordered Mobil to stop paying severance taxes. Further, the court could not have ordered Mobil to pay state severance taxes into the escrow. Mobil asserts that this alleged jurisdictional problem precludes the court from ordering restitution of amounts Mobil attributes to severance tax payments.

Mobil's argument is based on the misconception that, from the moment the oil was pumped out of the ground, approximately 7% of the selling price was irrevocably earmarked as "severance taxes." (By use of the term "severance taxes" the court means both the Oklahoma gross production tax of 7% and the Oklahoma petroleum excise tax of .085 of 1%). According to Mobil's position, if the court ordered Mobil to pay the entire stripper price differential into escrow, the court would be violating the Tax Injunction Act because 7% of the total amount was state severance taxes. By ordering the payment of the entire amount into escrow, Mobil argues that the court would be enjoining the collection of the state severance taxes. The court does not believe that the Tax Injunction Act so limited the court.

The approximately 7% which Mobil paid to the State of Oklahoma as taxes was not irrevocably determined to be "severance taxes" from the moment the oil was produced. Two alternatives were possible: either the regulations and Ruling 1974–29 were valid, thus prohibiting the charging of the stripper price for the oil; or the regulations and Ruling were invalid, thereby allowing the producers to charge the stripper price. Only in the latter situation would any additional taxes have been owed on the stripper price differential. As the parties are aware, the former, and not the latter, situation prevailed on appeal. The moneys Mobil asserts were taxes were never owed. The court does not believe that the Tax Injunction Act presents any bar in this situation. The fact that Mobil has not received a refund of the erroneously paid taxes does not alter this outcome. TECA has rejected this double taxation argument.

## V. PREJUDGMENT INTEREST

■ TECA has recently pointed out, in the context of a private action for damages under § 210(a) of the ESA, that "the statutory and regulatory framework [governing] the question of prejudgment interest is essentially *sui generis*. Consequently, decisions of other courts discussing general federal principles are of only limited help." *Kern Oil & Refining Co. v. Tenneco Oil Co.*, 868 F.2d 1279, 1281 (TECA 1989) (discussing the allowance of prejudgment interest in actions brought pursuant to

§§ 209, 210(a) & 210(b) of the ESA). Requiring the payment of prejudgment interest on overcharges is a method to make whole those who have been overcharged. *Bonray Oil Co. v. Department of Energy*, 472 F.Supp. 899, 904 (W.D.Okla.1978), *aff'd per curiam*, 601 F.2d 1191 (TECA 1979). In government enforcement actions under ESA § 209, the trial judge has *some* discretion in deciding whether to award prejudgment interest. *Lea Exploration, Inc. v. Department of Energy*, 843 F.2d 510, 512 (TECA 1988) (citing *United States v. Exxon Corp.*, 773 F.2d 1240, 1279 (TECA 1985), *cert. denied*, 474 U.S. 1105, 106 S.Ct. 892, 88 L.Ed.2d 926 (1986)); *United States v. Ladd Petroleum Corp.*, 843 F.2d 506, 510 (TECA 1988); *Citronelle–Mobile Gathering v. Herrington*, 826 F.2d 16, 29 (TECA), *cert. denied sub nom. Chamberlain v. United States*, 484 U.S. 943, 108 S.Ct. 327, 98 L.Ed.2d 355 (1987). Normally, an award or restitution under ESA § 209 will include prejudgment interest. *Lea Exploration*, 843 F.2d at 513.

DOE seeks prejudgment interest at interest rates based on DOE's Policy Statement on Interest, 46 Fed.Reg. 21,412 (April 10, 1981). These interest rates have been applied in various cases under the ESA. *See Lea Exploration*, 843 F.2d 510; *Ladd Petroleum*, 843 F.2d 506; *Citronelle*, 826 F.2d 16; *Exxon*, 773 F.2d 1240. This court has previously ordered payment of interest rates at the DOE policy rates. Dk. No. 1248 (*Suburban Propane Gas Corp. v. Department of Energy*, No. 77–1146 (D.Kan. Aug. 12, 1987)).

▮▮▮▮ The standards for awarding prejudgment interest must be applied consistently, "since one of the principal reasons for the establishment of the Temporary Emergency Court of Appeals was Congress' intent that there be consistency throughout the United States for cases decided under the ESA." *Lea Exploration*, 843 F.2d at 513 (citing S.Rep. No. 507, 92d Cong., 1st Sess., *reprinted in* 1971 U.S. Code Cong. & Admin.News 2283, 2292–94). DOE's interest rate schedule, used by DOE in administrative enforcement actions, should be applied to overcharges unless there are compelling reasons for not doing so. *Ladd Petroleum*, 843 F.2d at 510 (citing *Citronelle*, 826 F.2d at 30; *Exxon*, 561 F.Supp. 816, 858 (D.D.C.1983), *aff'd* 773 F.2d 1240, 1279 (TECA 1985)). The DOE policy rates generally must be applied to ensure uniformity in cases under the ESA. *Ladd Petroleum*, 843 F.2d at 510 (citing *Lea Exploration*, 843 F.2d 510).

TECA has recently discussed the issue of prejudgment interest in ESA §§ 209 and 210 actions. *Kern Oil & Refining Co. v. Tenneco Oil Co.*, 868 F.2d 1279 (TECA 1989). Prejudgment interest is allowed in private actions for damages for overcharges under ESA § 210(b) and in government actions for restitution under ESA § 209, even in certain cases where the claims are unliquidated. *Id.* at 1282. In actions under ESA § 210(a) for damages for lost profits, which are by nature unliquidated and uncertain, prejudgment interest is not allowed. *Id.* at 1281–82.

Mobil identifies five factors which it asserts the court should apply to determine whether prejudgment interest should be applied: (1) whether the party has retained and made use of the overcharges, citing *Phillips Petroleum Co. v. Adams*, 513 F.2d 355, 365 (5th Cir.), *cert. denied*, 423 U.S. 930, 96 S.Ct. 281, 46 L.Ed.2d 259 (1975); (2) whether the failure to refund the overcharge was willful, citing *Zahir v. Shell Oil Co.*, 718 F.2d 1567, 1572 (TECA 1983); (3) whether the claim was liquidated, citing *Gulf Oil Corp. v. Dyke*, 734 F.2d 797, 806 (TECA), *cert. denied*, 469 U.S. 852, 105 S.Ct. 173, 83 L.Ed.2d 108 (1984); (4) whether the claimant has been vigorous in prosecution; and (5) other equitable considerations. The court will address each of these factors in turn.

### 1. Retention of Overcharges

The case cited by Mobil applied Texas law and is therefore inapplicable to the present case. Further, TECA has rejected the argument that prejudgment interest should be denied when overcharge funds were not actually received. *Lea Exploration*, 843 F.2d at 513; *Citronelle*, 826 F.2d at 28–30.

### 2. Willful Failure to Refund Overcharges

The case cited by Mobil was not an action for overcharges. *Zahir*, 718 F.2d at 1572. This fact is important in light of TECA's discussion in *Kern* of the allowance of prejudgment interest in overcharge cases but not in damage cases. *Kern*, 868 F.2d at 1281–82. In *Zahir*, prejudgment interest was denied because the claim was not for a liquidated or readily liquidatable sum. *Zahir*, 718 F.2d at 1573. Regarding willfulness, TECA has rejected the defense of good faith as a justification for awarding interest at below-market rates. *Citronelle*, 826 F.2d at 28–320.

### 3. Liquidated Sum

In light of TECA's decision in *Kern*, it is unclear how important this factor is in ESA § 209 actions. Nevertheless, the court finds that the DOE's claim is one which is liquidated or readily liquidatable. The total amount of Mobil's overcharges is capable of determination with mathematical precision from an examination of Mobil's production records. Application of this factor supports the imposition of prejudgment interest.

### 4. Diligence in Prosecution

In three separate cases, TECA has rejected the argument that interest should be denied because of a four year delay in prosecution by the government. *Lea Exploration*, 843 F.2d at 513; *Ladd Petroleum*, 843 F.2d at 509; *Citronelle*, 826 F.2d at 29. A similar delay in the present action from the determination of the fact of overcharge to the filing of the counterclaim is not fatal to the claim for prejudgment interest at DOE policy rates.

### 5. Other Equitable Considerations

This is not a separate factor, since restitution is an equitable remedy. *See Citronelle*, 826 F.2d at 28. In this action, however, the court must find not merely equitable reasons but compelling reasons for either denying prejudgment interest or awarding prejudgment interest at below-market rates. *Lea Exploration*, 843 F.2d at 513. Mobil has identified no compelling reasons justifying the denial of prejudgment interest or the award of interest at a below-market rate. Consequently, prejudgment interest shall be awarded based on DOE's policy rates.

DOE seeks the application of the "United States Rule." This rule provides that in applying partial payments to an interest bearing debt which is due, the payment should first be applied to the interest due, in the absence of an agreement or statute to the contrary. *See Shutts v. Phillips Petroleum Co.*, 222 Kan. 527, 567, 567 P.2d 1292, 1321 (1977) (definition of United States Rule), *cert. denied*, 434 U.S. 1068, 98 S.Ct. 1246, 55 L.Ed.2d 769 (1978). Mobil has provided the court with no agreement, statute, or other authority to the contrary. Therefore the United States Rule shall govern.

The court has a few remarks before concluding. As the court indicated at the hearing on this motion and other pending motions, the court is sympathetic with Mobil's problem with the State of Oklahoma which forms the basis for several motions still under consideration. However, it does not alter any portion of this opinion as to the legal issues between Mobil and DOE.

IT IS BY THE COURT THEREFORE ORDERED that the Department of Energy's motion to sever is hereby granted.

IT IS FURTHER ORDERED that Mobil's motion for summary judgment is hereby denied.

IT IS FURTHER ORDERED that DOE's motion for summary judgment is hereby granted. The Clerk shall enter judgment ordering Mobil to deposit $10,214,510, plus interest accruing after March 31, 1989, through the date of payment, into the escrow account established by this court.