**LEA EXPLORATION, INC.,**
**Plaintiff–Appellee/Cross–Appellant,**

v.

**DEPARTMENT OF ENERGY, John S. Herrington, Secretary of Energy, and the United States of America, Defendants–Appellants.**

**Nos. 5–122, 5–123.**

Temporary Emergency Court of Appeals.

Argued Jan. 4, 1988.
Decided Feb. 29, 1988.

James R. Madison, with whom Stephen Mark Tatum, Wiener, Weiss, Madison &

Howell, Shreveport, La., was on the brief for plaintiff-appellee/cross-appellant.

Robert C. Chesnut, with whom Stephen E. Hart, Dept. of Justice, Civ. Div., Washington, D.C., Richard K. Willard, Asst. Atty. Gen., and Don W. Crockett and Peter S. Burns, Dept. of Energy, Washington, D.C., were on the brief for defendants-appellants.

Before GARZA, Chief Judge, and DAUGHERTY and BROWN, Judges.

WESLEY E. BROWN, Judge.

This case arises under Section 209 of the Economic Stabilization Act of 1970.[1] Lea Exploration (Lea) brought an action for declaratory relief in United States District Court, seeking a judgment stating that Lea did not violate the Department of Energy's (DOE) Mandatory Petroleum Price Regulations.[2] The DOE counterclaimed, alleging that Lea improperly classified oil from two of its wells as "newly discovered crude oil," and overcharged customers on sales of oil from those two wells. The Government sought restitution for the overcharges under Sec. 209.

The District Court issued a memorandum ruling which granted in part and denied in part both parties' motions for summary judgment. The court held that sales of oil from Lea's "Wilbert & Sons" well violated DOE regulations, but that sales from the "John Germany" well did not. The trial court ordered Lea to make restitution for overcharges on the Wilbert well, but denied the Government's request for prejudgment interest on the restitution award. The Government now appeals the District Court's finding that sales of oil from the Germany well did not violate DOE regulations and also challenges the court's denial of prejudgment interest. In addition, the District Court rejected Lea's argument that the Government's claim was barred by a statute of limitations or by laches. Lea challenges this ruling on a cross-appeal,

---

1. 12 U.S.C. Sec. 1904, note, as incorporated into the Emergency Petroleum Allocation Act of 1973, 15 U.S.C. Secs. 751–760h.

2. The action was commenced after the DOE issued a "Proposed Remedial Order," which alleged that Lea overcharged customers on sales of oil from two of Lea's wells.

and also argues the trial court erred by refusing to strike a Government affidavit from the record.

## I. *The Definition of "Produced"*

This case involves regulation 10 C.F.R. Sec. 212.79(b) (1979), which stated: " 'Newly discovered crude oil' means domestic crude oil which is: ... (2) produced ... from a property from which no crude oil was produced in calendar year 1978." The regulations allowed oil which qualified as newly discovered to be sold at higher prices than other types of oil. *See generally* 10 C.F.R. Part 212.

Lea completed and tested the Germany well in November of 1978, in Iberville Parish, Louisiana. During well tests, Lea extracted approximately ten (10) barrels of oil from the well. The oil was allowed to run into a test pit, where it was burned off. Lea burned the oil because there was no surface storage equipment in place at the well site. Lea contends that oil was not "produced" from this well, as that term was used in Sec. 212.79, since the test oil from the well was not retained but was burned off. The Government, on the other hand, maintains that oil was "produced" once it was extracted from the ground.

■ The issue of when oil was produced is also raised in a companion case, *United States v. Ladd Petroleum Corp.*, 843 F.2d 506 (Temp.Emer.Ct.App.1988). For the reasons set forth in the *Ladd* case, we hold that oil was "produced" from the well when it was extracted from the ground in a measurable amount. Lea's subsequent disposition of the oil had no effect on whether oil from the well qualified for "newly discovered" status.

The trial court in the present case examined Sec. 212.79 and DOE Ruling 1980–3, which interpreted Sec. 212.79, in its memorandum ruling. The court stated: "The agency's ruling prohibits property, from which oil in measurable amounts was *extracted* in 1978, from qualifying as 'newly discovered crude oil.' " (Record on Appeal, Vol. III at p. 396) (emphasis added). Because oil was extracted from the Wilbert well in 1978, the court ruled that the well

did not qualify for newly discovered status. (This ruling is not challenged on appeal.) As to the John Germany well, however, the court applied a different standard. The court stated:

In the case of the Germany No. 1, a miniscule amount of condensate was extracted during well tests and then burned in the mud pit. This cannot qualify as a 'measurable amount' of production in 1978 since the oil was not *produced*. Oil was *extracted* from this well, the something extra—storage, retention, processing—which elevates mere extraction to production was noticeably absent in the Germany No. 1 well tests. (Record on Appeal, Vol. III at p. 397) (emphasis in original).

As we concluded in the *Ladd* case, oil was "produced," for purposes of Sec. 212.-79, once it was extracted from the ground in a measurable amount. We therefore reverse the trial court's finding that the Germany well did not produce oil in 1978, and find that sales of oil from the well in 1979 and 1980 violated Sec. 212.79(b). Furthermore, we find that ten (10) barrels of oil constituted a "measurable amount" as required by Ruling 1980–3. Because the standard unit of measure for oil is the barrel, ten barrels is clearly a "measurable amount" of oil. *See* 45 Fed.Reg. 48577.

## II. *Prejudgment Interest*

■ The trial court refused to award prejudgment interest on the restitution award arising out of sales of oil from the Wilbert well. The Government argues on appeal that an award in restitution must include prejudgment interest, while Lea argues that the trial court properly exercised its discretion in denying interest. Although we reject the Government's argument that a trial court must always include prejudgment interest, we find that under the circumstances of this case, prejudgment interest must be awarded on overcharges from both of Lea's wells.

The trial judge has some discretion in deciding whether to award prejudgment interest. *United States v. Exxon*, 773 F.2d 1240, 1279 (Temp.Emer.Ct.App.1985); *cert.*

*denied,* 474 U.S. 1105, 106 S.Ct. 892, 88 L.Ed.2d 926 (1986). This discretion is not within limits, however, and we have recognized that under the Economic Stabilization Act restitution should make victims of overcharges whole, unless some compelling reason counsels otherwise. *Citronelle–Mobile Gathering, Inc. v. Herrington,* 826 F.2d 16, 28 (Temp.Emer.Ct.App.1987). Thus, under normal circumstances, an award of restitution under Sec. 209 will include prejudgment interest. *Cf. Donovan v. Brown Equipment & Service Tools, Inc.,* 666 F.2d 148, 156–57 (5th Cir.1982) (Judge's discretion to order restitution should be exercised consistently with the purposes of the act which authorized it; in view of the purposes behind the Fair Labor Standards Act, the district court's denial of restitution was an abuse of its "small residue of discretion.").

This court has, on occasion, found compelling reasons for denying prejudgment interest. *See e.g., Eastern Air Lines, Inc. v. Atlantic Richfield Company,* 712 F.2d 1402 (Temp.Emer.Ct.App.1983), *cert. denied,* 464 U.S. 915. (Prejudgment interest denied where the amount of overcharges was uncertain). In the *Herrington* case, however, this court found no compelling circumstances that would warrant an award of less-than-full prejudgment interest. We believe that the circumstances of the case at bar are indistinguishable from our decision in *Herrington,* and under the rule of that case we must conclude that there are no compelling circumstances for denying prejudgment interest in the present case. This finding is the result of our duty to apply the standards for awarding prejudgment interest consistently from case to case, since one of the principal reasons for the establishment of the Temporary Emergency Court of Appeals was Congress' intent that there be consistency throughout the United States for cases decided under the ESA. S.Rep. No. 92–507, 92nd Cong., 1st Sess., reprinted in 1971 U.S.Code Cong. & Ad.News 2283, 2292–94.

█ The trial court cited three reasons for denying prejudgment interest in this case. The first reason was the Government's delay in bringing suit, second was Lea's overpayment of taxes and royalties, and the third reason was the involvement of Koch Oil Company, the purchaser of the oil, in Lea's classification of the oil. (Memorandum Ruling, Record on Appeal, Vol. III at p. 389).

As to the first factor, the court found that over four years had elapsed from the time Lea first submitted a property report on its wells until the time the DOE notified Lea of a potential violation. In *Herrington,* however, we rejected the argument that such a delay warranted an award of reduced prejudgment interest. *Herrington,* 826 F.2d at 29. *See also United States v. Ladd Petroleum,* TECA No. 5–124. The second factor relied on by the trial court in denying interest was Lea's payment of severance taxes, windfall taxes, and royalties—all based on the market price Lea received for the oil. Again, the *Herrington* court rejected this type of argument. In *Herrington,* the trial court reduced the restitution award by an amount which the defendant had paid in state and federal income taxes, state severance taxes, and other administrative expenses. *Herrington,* 826 F.2d at 28. The TECA court reinstated the full amount of restitution plus interest, stating: "We believe the subtraction of taxes precludes the award of an amount which would make victims whole and we find no compelling reason to detour from pursuing that objective." *Id.* Likewise, there is no compelling reason in the present case to deprive the victims of the overcharges of the full value of their money. That value includes the benefits which Lea has had from the use of the money over the years. *Id.* at 29. ("The duty to make full and adequate restitution must, of necessity, include the benefits the wrongdoer enjoyed by having the use over the years of the money illegally obtained.") Like the defendant in *Herrington,* Lea must pursue its tax grievances with the appropriate agencies.

The third factor that the trial court relied on for denying interest was the role that Koch Oil Company played in the classification of the oil as "newly discovered." We believe the trial court's reliance on this

factor was misplaced for two reasons. First, the trial court concluded that a January 15, 1979 letter from Koch to Lea encouraged Lea to classify the oil as "newly discovered" with an erroneous interpretation of Sec. 212.79. (Memorandum Ruling, Record on Appeal, Vol. III at p. 400). In fact, the letter was little more than a restatement of the regulation.[3] Lea alone was responsible for the classification of the oil. *See Sauder v. Department of Energy*, 648 F.2d 1341, 1347–48 (Temp.Emer.Ct. App.1981). Secondly, the court concluded that an award of interest would be an undeserved windfall to Koch Oil. This conclusion overlooks the fact that the actual victims of the overcharges were, in all likelihood, the consuming public. *See United States v. Exxon*, 773 F.2d 1240, 1283–86 (Temp.Emer.Ct.App.1985). Under the procedures set forth in 10 C.F.R. Part 205, subpart V, the DOE must attempt to identify and reimburse those victims. *Herrington*, 826 F.2d at 30–31. In view of these factors, the involvement of Koch Oil was not a compelling reason for denying prejudgment interest on the overcharges.

■ The proper rate of interest to be applied to the overcharges has been established by our decisions in *United States v. Exxon*, 773 F.2d 1240, 1273 (Temp.Emer.Ct. App.1985) and the *Herrington* case, 826 F.2d 16, 30 (Temp.Emer.Ct.App.1987). In those cases we applied the interest rates found in the DOE rate schedule, which the DOE applies in administrative enforcement actions. This schedule bears a reasonable relation to the value of the funds wrongfully held by Lea, and should be applied to the overcharges on sales from the Wilbert and Germany wells. *See Herrington*, 826 F.2d at 31 (setting forth rate schedule as it appears in 46 Fed.Reg. 21,412–14 (1981)).

### III. *Statute of Limitations and Laches*

Lea argues that the Government's action under Section 209 of the ESA, 12 U.S.C. Sec. 1904 note, should have been barred by a statute of limitations or by laches. We uphold the trial court's ruling, however, that the Government's action was not time barred.

■ Lea urged the trial court to apply a Louisiana one-year statute of limitations to the Sec. 209 claim. The trial court properly refused to do so under the authority of *Citronelle–Mobile Gathering, Inc. v. Edwards*, 669 F.2d 717, 721 (Temp.Emer.Ct. App.1982), *cert. denied*, 459 U.S. 877, 103 S.Ct. 172, 74 L.Ed.2d 141. In *Edwards*, the court stated that a Sec. 209 claim was a suit to enforce equitable rights created by federal law, and as such, was not subject to state statutes of limitations. *Id.* (citing *Holmberg v. Armbrecht*, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946)). Additional-

---

**3.** The letter stated in pertinent part:

Dear Operator:

Effective June 1, 1979 the Economic Regulatory Administration of the DOE amended its regulations to provide additional price incentives for production which qualifies as newly discovered crude oil. Newly discovered crude oil is defined as crude oil sold after May 31, 1979, which was produced from: 1.) an onshore *property* from which no crude oil was produced in calendar year 1978....

Our records indicate that production from the above referenced lease may qualify as newly discovered crude oil since our records show no purchases from this lease in 1978. However, if you sold production from this lease to another purchaser during 1978 or if this lease represents only a part of a property under DOE regulations, the lease production may not qualify as newly discovered.

If you determine that your property does qualify as newly discovered, please complete the attached certification letter and return it to us. Retain a copy for your files. Certifications received on or before July 1, 1979 will enable us to pay the proper price for your June production.

\*  \*  \*  \*  \*  \*

Pursuant to the Mandatory Petroleum Price Regulations of the Department of Energy, as amended effective June 1, 1979, the undersigned Operator on the above described property, hereby certifies that the crude oil from that property qualifies as *"newly discovered crude oil"* \* \*

\*  \*  \*  \*  \*  \*

\* \* "newly discovered crude oil" means domestic crude oil which is: (A) produced from a new lease on the Outer Continental Shelf; or (B) produced (other than from the Outer Continental Shelf) from a property from which no crude oil was produced in calendar year 1978.

(Record on Appeal Vol. II Pp. 284–85) (emphasis in original)

ly, the court recognized that application of various state statutes of limitations would be inconsistent with the policies underlying Sec. 209. *Edwards*, 669 F.2d at 721.

Lea asks the court to apply the "concurrent jurisdiction" rule to the present case. Under that rule, an equitable claim may be barred if it existed concurrently with a legal remedy which is barred by a statute of limitations. *See e.g., Nemkov v. O'Hare Chicago Corp.*, 592 F.2d 351 (7th Cir.1979) (Equitable jurisdiction is concurrent if the statute relied upon provides for legal and equitable remedies). Lea argues that the Government possessed a concurrent legal and equitable remedy in this suit—the right to seek civil penalties as well as a claim for restitution. Lea's argument, though, is without authority and is not persuasive. The Government's only method for recovery of overcharges in this case was an equitable action for restitution under Sec. 209 of the ESA. As such, the Government possessed a federal right for which the sole remedy was in equity. *Holmberg v. Armbrecht, supra.* The Government's claim is therefore not barred by a statute of limitations. *See Edwards*, 669 F.2d at 721 ("[T]here is no specific federal statute of limitations applicable to Sec. 209 actions....").

■ The doctrine of laches is likewise inapplicable to the case at bar. The general rule is that absent a federal statute of limitations, laches cannot be asserted against the government in an action brought to enforce a public right or protect a public interest. *United States v. Summerlin*, 310 U.S. 414, 416–17, 60 S.Ct. 1019, 1020–21, 84 L.Ed. 1283 (1940). This rule preserves the public rights, revenues, and property from injury and loss by the negligence of public officers. *Costello v. United States*, 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961). Lea concedes this general rule, but contends the Government is a nominal party to the Sec. 209 action. *See United States v. Beebe*, 127 U.S. 338, 8 S.Ct. 1083, 32 L.Ed. 121 (1888) (Laches may apply where the government is a mere formal complainant in a suit brought on behalf of others).

Lea characterizes the present suit as an action brought by the Government on behalf of Koch Oil Company, the purchaser of Lea's oil. This line of reasoning cannot stand in light of our decision in the *Edwards* case, *supra.* In that case, the court stated clearly: "Actions by the United States under ESA Sec. 209 are taken to enforce public, not private rights." *Edwards*, 669 F.2d at 721. *Cf. Marshall v. Inter–Mountain Electric Company*, 614 F.2d 260, 263 (10th Cir.1980) (Under *Occidental Life Insurance v. EEOC*, 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402, laches might be applied where an action is brought by the government to enforce private as well as public rights). Our characterization of a Sec. 209 action as a claim to enforce public rights is supported by the nature of the injury in this type of case—where overcharges by a well operator were almost certainlypassed on to the consuming public as a whole. *See United States v. Exxon*, 773 F.2d 1240, 1283–86 (Temp. Emer.Ct.App.1985).

### IV.  *Motion to Strike*

Lea's final argument is that the trial court erred by refusing to strike a Government affidavit from the record. We affirm the trial court's denial of the motion to strike since the trial court did not consider the affidavit in rendering its decision (*see* Memorandum Ruling, Record on Appeal, Vol. III at Pp. 527–29), nor was it a factor in our decision.

### V.  *Conclusion*

The case is remanded to the District Court for entry of summary judgment in favor of the United States as to the John Germany well; judgment to be in the amount of $160,023.07 plus prejudgment interest. Prejudgment interest is also granted on overcharges from the Wilbert well, and interest on overcharges from both wells shall be computed at the rates set forth in the DOE interest rate schedule.

*See Citronelle–Mobile Gathering, Inc. v. Herrington,* 826 F.2d at 31 (Temp.Emer.Ct. App.1987).

The District Court shall direct that the judgment be placed in an escrow account established by the DOE and disbursed pursuant to 10 C.F.R. Part 205. Subpart V. The District Court will retain jurisdiction to oversee the implementation of the DOE's Subpart V procedures.

The District Court's rulings on the statute of limitations, laches, and the DOE affidavit are affirmed.

AFFIRMED in part and REVERSED in part with directions.