CONOCO INC., Plaintiff–Appellant,

v.

**J.M. HUBER CORPORATION,**
Defendant–Appellee.

No. 01–1554.

United States Court of Appeals,
Federal Circuit.

May 14, 2002.

Joseph W. Kennedy, Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, KS, argued for plaintiff-appellant.

Jim H. Goering, Foulston & Siefkin LLP, of Wichita, KS, argued for defendant-appellee. With him on the brief was Timothy B. Mustaine.

Before SCHALL, GAJARSA, and LINN, Circuit Judges.

GAJARSA, Circuit Judge.

Conoco, Inc. ("Conoco") appeals a decision of the United States District Court for the District of Kansas in which the court's summary judgment decision granted in-part Conoco's claim against J.M. Huber Corporation ("Huber") for reimbursement of amounts Conoco paid for overcharges arising from the sale of petroleum products at higher-than-regulated prices during 1980–81. *See Conoco Inc. v. J.M. Huber Corp.*, 148 F.Supp.2d 1157 (D.Kan.2001). Although it granted Conoco's claim for the principal overcharge amount, in the remedy portion of its decision, the district court exercised its equitable powers and denied Conoco's request for reimbursement from Huber of prejudgment interest on such principal amount. Because such denial was not an abuse of discretion, we affirm.

## I. BACKGROUND

For nine months in 1980–81, from May 1980 through January 1981 (the "stripper period"), Conoco operated a crude oil field (the North East Cherokee Unit or "NECU") located in Oklahoma in which Huber owned the rights to approximately three percent of the crude oil production. *Conoco*, 148 F.Supp.2d. at 1164. Conoco owned the rights to approximately thirty-eight percent of the production and third parties owned the rights to the remainder of the production. During the stripper period, Sun Oil Company ("Sun") purchased all the crude oil from NECU, paying third parties such as Huber directly. *Id.*

During the 1970s and into the early 1980s, and at all times during the stripper period, the federal government mandated price controls on petroleum production. *See generally Chevron U.S.A. Inc. v. Mobil Producing Tex. & N.M.*, 281 F.3d 1249, 1251 (Fed.Cir.2002); *Conoco*, 148 F.Supp.2d. at 1162. Under a federal regulation promulgated in 1974, the price controls did not apply to "stripper wells," *i.e.*, wells with an average daily production of less than ten barrels per well; however, "injection wells"[1] could not be counted when certifying a property as "stripper property." *Chevron U.S.A.*, 281 F.3d at 1251; *Conoco*, 148 F.Supp.2d. at 1162. Unbeknownst to Huber, Conoco incorrectly classified NECU as stripper property by including injection wells in the total well count. As a result, and also unbeknownst to Huber, Sun paid market prices to all rights-holders (sometimes called working interest owners) of NECU production, including Conoco and third parties such as Huber, rather than paying lower, regulated prices. This provided a windfall to the rights-holding group from the overcharges. *Id.* at 1164.

---

1. "Injection wells do not extract oil but are used to inject substances into the underground reservoirs serving the producing wells, in order to aid in the extraction of oil." *Chevron U.S.A.*, 281 F.3d at 1251.

The rule that injection wells could not be counted in evaluating a "stripper property" was subject to a lengthy challenge before it was eventually upheld. *See Chevron U.S.A.*, 281 F.3d at 1251–52; *Conoco*, 148 F.Supp.2d. at 1162–63. Litigation in federal courts involving the Department of Energy ("DOE") and concerning the injection well ruling and the resulting liability from overcharges began in 1976, and, in Conoco's case, ended in November 1997. *Id.* at 1162–63, 1174. The injection well ruling was first challenged in the District of Kansas by a third party suit against the DOE in 1976. *Id.* at 1162. For a time, the DOE was enjoined from enforcing the injection well ruling. *See W.R. Murfin Drilling Co. v. United States Dep't of Energy*, 90 F.3d 1551, 1553–54 (Fed.Cir.1996). During the stripper well litigation, oil producers were required to escrow with the district court the difference between the unregulated stripper well price and the regulated price (the "overcharge"). *Conoco*, 148 F.Supp.2d. at 1162. Eventually, in 1979, similar suits from around the United States were consolidated into Multidistrict Litigation ("MDL") in the Kansas district court, which upheld the injection well ruling. In 1986, the parties to the MDL, including Conoco, entered into a Final Settlement Agreement ("FSA"), under which several billion escrowed dollars were distributed. *Id.*

However, the FSA did not finalize all aspects of the dispute because it did not resolve the issue of whether certain plaintiff-producers underpaid into the escrow fund. Thus, the DOE audited all parties, including Conoco. In December 1987, the DQE advised Conoco that it failed to contribute approximately $4.4 million dollars in overcharges. Conoco responded that because it operated many properties that it did not actually own, approximately eighty percent of the $4.4 million was attributable to third parties, such as Huber, who owned an interest in the oil-producing properties. *Id.* at 1163.

Beginning in 1988, Conoco made supplemental payments into the escrow fund but stated that the payments were only for its twenty percent, so the DOE sued Conoco for the remaining eighty percent under the "operator liability" theory.[2] *Id.* The DOE won at the district court in late 1994 and over the next two years there were two appeals to the Federal Circuit.[3] *Id.* at 1163–64. Then, after a settlement agreement, Conoco paid the remaining eighty percent, thus repaying those overcharges that Sun paid to third parties. The amounts Conoco paid included interest. *Id.* Then Conoco sought reimbursement from third party rights-holders in NECU production such as Huber. *Id.* at 1166–67. Thus, in 1998, it sued Huber for reimbursement under a theory of restitution.

The district court held that Huber must pay Conoco the principal amount for the overcharges, approximately $60,000.

---

**2.** "[T]he doctrine of operator liability ... permits the DOE, as a matter of administrative convenience, to recover from the operator the full amount of all overcharges for oil from the operated property, even when only the working interest owners, not the operator, received the overpayment." *Chevron U.S.A.*, 281 F.3d at 1252 (citing *W.R. Murfin Drilling*, 90 F.3d at 1555). *See also Exxon Corp. v. Jarvis Christian Coll.*, 746 F.Supp. 652, 654–55 (E.D.Tex. 1989) (*"Jarvis I"*) (originating the operator liability doctrine and noting that the doctrine

serves to shift the initial burden to pay to the entity operating the oil-producing facility, but recognizing that such entity has recourse against the other interest owners).

**3.** The district court entered judgment on February 14, 1995. Conoco did not appeal liability for the NECU property "because Conoco believed [the] DOE had sufficiently established stripper overcharges with respect to all production at NECU." *Id.* at 1163–64.

However, in the remedy phase of its ruling, it declined to order Huber to pay Conoco for much of the prejudgment interest because the district court concluded, based on equitable principles, that the lack of any notice by Conoco to Huber of the potential and growing (via interest) liability should limit Conoco's recovery. *Id.* at 1166–67, 1175–77.

First, the district court held that Conoco established the necessary elements of restitution, and then evaluated Huber's two affirmative defenses. *Id.* at 1166–67. Huber argued that a 1981 consent decree between it and the DOE settled any liability Huber had for federal petroleum price regulations, including stripper well liability. The court denied the defense, finding that the consent decree did not cover NECU because it was for unrelated natural gas producing properties, not crude petroleum production. *Id.* at 1169. Huber also asserted a "notice" defense, alleging that Conoco had a fiduciary or similar duty to keep Huber informed of the potential for judgment against it. *Id.* at 1170. The court found that any such duty was not a defense because under the law of the state of Oklahoma any fiduciary status that was established by operating oil-producing properties for a third party did not extend to the circumstances of this case. *Id.* at 1172–73.

Next, the district court analyzed the issue appealed to this Court—whether Huber should pay Conoco prejudgment interest. The court found that Conoco was entitled to prejudgment interest as part of its restitutionary claim, but that due to "equitable considerations" it would award interest for a length of time "significantly less than what is argued by Conoco." *Id.* at 1174. The court noted that Conoco's litigation with the DOE extended from 1981 to November 1997. *Id.* Then, on July 30, 1998, Conoco sent Huber a demand letter. The parties stipulated that this letter was the first time Conoco informed Huber that Huber was alleged to have received overcharges for NECU production. *Id.* at 1174–75.

Huber did not dispute the fact that Conoco had to pay interest on overcharges Huber received from Sun. Huber relied on its "amalgamated 'notice' defense, claiming equitable factors ... preclude awarding prejudgment interest, at least to the extent requested." *Id.* at 1175. Huber argued to the district court that a lengthy period of prejudgment interest would allow Conoco to benefit from "keeping Huber in the dark." *Id.* While noting that some cases from the Temporary Emergency Court of Appeals had rejected variations of this argument in related legal contexts, *id.*, the court concluded that equitable principles and a sense of fairness required Huber to pay prejudgment interest only during the time period beginning on July 30, 1998, the date of Conoco's demand letter. The district court found this to be the fair solution because Conoco never explained its "failure to at least offer Huber the ability to satisfy its obligation at an earlier point in time." *Id.*

Conoco argued that the amount of Huber's liability was not known until later in the stripper well litigation, but the district court rejected this contention based on undisputed evidence in the record that Huber's liability was established with certainty at least as early as 1995. *Id.* at 1176. In addition, although Huber generally was aware that price regulation lawsuits were ongoing across the nation, Conoco's argument that Huber should have asked about potential NECU liability was unpersuasive because Conoco, "as the holder of such information, was in a far superior position to inform Huber of the potential liability." *Id.* at 1177.

Conoco timely appealed only the pre-judgment interest issue from the district court's grant of summary judgment. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(11)-(12).

## II. STANDARD OF REVIEW

■ In reviewing cases resulting from price controls for crude oil pursuant to the Economic Stabilization Act of 1970 ("ESA"), Pub.L. No. 91–379, 84 Stat. 799 (codified at 12 U.S.C. § 1904 note), and the Emergency Petroleum Allocation Act of 1973 ("EPAA"), Pub.L. No. 93–159, 87 Stat. 627 (codified at 15 U.S.C. §§ 751–760h), we have adopted the precedent established by the Temporary Emergency Court of Appeals ("TECA"). *See Murphy Exploration & Prod. Co. v. Oryx Energy Co.*, 101 F.3d 670, 673 n. 4 (Fed.Cir.1996). In accordance with "the generally applicable federal rule that in the absence of a statutory provision, the award of prejudgment interest is in the discretion of the trial court," *Kern Oil & Refining Co. v. Tenneco Oil Co.*, 868 F.2d 1279, 1281 (Temp.Emer.Ct.App.1989) (internal citations omitted), we review the district court's determination to limit the award of prejudgment interest under an abuse of discretion standard, *MAPCO Int'l Inc. v. Fed. Energy Regulatory Comm'n*, 993 F.2d 235, 248 (Temp.Emer.Ct.App.1993) (noting that in an oil price overcharge restitution case "[t]he trial judge has some discretion in determining the prejudgment interest award, and the appellate court reviews that decision for an abuse of discretion.") (citing *Lea Exploration, Inc. v. Dep't of Energy*, 843 F.2d 510 (Temp.Emer.Ct.App.1988)). *See also Milwaukee v. Cement Div., Nat'l Gypsum Co.*,

515 U.S. 189, 196 n. 7, 115 S.Ct. 2091, 132 L.Ed.2d 148 (1995) (noting that in contexts beyond the admiralty issue in the appeal, courts have recognized that despite the compensatory nature of an award of prejudgment interest, such "interest is not recovered according to a rigid theory of compensation for money withheld, but in response to considerations of fairness") (internal quotations omitted); *Electro Scientific Indus., Inc. v. Gen. Scanning Inc.*, 247 F.3d 1341, 1349, 58 USPQ2d 1498, 1503 (Fed.Cir.2001) (specifying in patent infringement action that the prejudgment interest determination of the district court is reviewed for an abuse of discretion).

Conoco argues that the issue on appeal is such that it deserves a *de novo* standard of review. Quoting *In re Department of Energy Stripper Well Exemption Litigation*, 968 F.2d 27 (Temp.Emer.Ct.App.1992), it characterizes the issue as "the scope of the federal common law right of reimbursement arising out of the [ESA and EPAA]." *Id.* at 30. Huber counter-argues that the only question is whether the district court abused its discretion in determining not to award prejudgment interest: the issue on appeal is not whether this Court would have handled the interest question differently, but whether it was an abuse of discretion. We agree with Huber that the appropriate standard of review is abuse of discretion. Conoco has not appealed the district court's decision to require Huber to pay the principal overcharge amount, presumably because the district court decided this issue in Conoco's favor.[4] While it is true, as Conoco points out, that our review of the restitutionary claim on a summary judgment posture would be *de novo*, what

---

4. In approximate figures, the district court decision required Huber to pay Conoco $60,000 in overcharge principal, $10,000 in prejudgment interest; but declined to order

Huber to pay an additional $245,000 in prejudgment interest sought by Conoco for the sixteen years from approximately 1982 to 1998.

Conoco has appealed is an issue from the remedy portion of the district court's decision. *Kern Oil & Refining*, 868 F.2d at 1282 (noting that determination of interest awards are within the equitable powers of the courts); *see also In re Dep't of Energy Stripper Well Exemption Litig.*, 968 F.2d at 35 (noting that the court "has the power to do equity and mould each decree to the necessities of the particular case"). Because the issue before us is the scope of the remedy, our review is for abuse of discretion.

In addition, Conoco also argues that the district court abused its discretion by failing to apply a notion of "compelling circumstances" to its remedy analysis and urges us to apply such a notion upon our review. Conoco bases this argument on its reading of *Lea Exploration, see* 843 F.2d at 512–13, and that case's cautionary language that courts should award interest consistently in order to affirm the purposes of the ESA and EPAA, *id.* at 513. In a case where the DOE sought restitution from Lea Exploration for overcharges that Lea Exploration collected from its customers, the court in *Lea Exploration* noted that "restitution should make victims of overcharges whole, unless some compelling reason counsels otherwise." *Id.* For several reasons, we disagree with Conoco's assertion that *Lea Exploration* limits the district court's discretion through a governing notion of "compelling circumstances." First, the district court in *Lea Exploration* rejected "the Government's argument that a trial court must always include prejudgment interest." *Id.* at 512. Second, in the present case, Sun, not Conoco, is the "victim" who paid higher-than-regulated prices. This factual distinction limits the broad reading Conoco

seeks to ascribe to *Lea Exploration*—it does not necessarily extend to operator liability situations such as the one at issue in the present case. Finally, the court's discussion of "compelling reasons," consistency, and affirming the purposes of the ESA and EPAA, are all in the context of a suit where an overcharging producer is in dispute with the Government and the overcharged customers deserve restitution. This context is different from the operator liability situation, where the dispute is among the interests owners and/or operators of the oil-producing property. This shift in focus means that even if a district court must meet a "compelling circumstances" requirement to decline to charge prejudgment interest against an overcharging producer, such a requirement does not automatically extend to this case.[5] In addition, as discussed below, even if such a requirement applied, the district court was within its discretion to find compelling circumstances here.

In sum, the standard of review we apply in operator liability restitution cases is to review for an abuse of discretion the district court's exercise of its equitable powers to determine the proper remedy and whether that remedy includes some or all of the prejudgment interest.

## III. DISCUSSION

On appeal the thrust of Conoco's argument is: (i) that, in a nearly automatic fashion, the federal common law right of restitution includes prejudgment interest; and (ii) that the district court erred in several ways by not following this automatic prescription and allowing Conoco to recover such interest from Huber.

---

5. As the issue is not before us, we express no opinion as to whether a "compelling circum- stances" requirement exists in such a suit.

■ Conoco argues, in essence, that the cases dealing with a variety of overcharges under the ESA and the EPAA mandate an award of prejudgment interest once the overcharge is proven. Conoco bases its reasoning on the underpinnings of the operator liability doctrine: "[o]perator liability has been imposed in at least two general situations: when the operator is the animating force responsible for the overcharges, or when the operator is held liable as a matter of administrative convenience." *In re Dep't of Energy Stripper Well Exemption Litig.*, 743 F.Supp. 1467, 1475 (D.Kan.1990). Relying on the latter, Conoco argues that the harshness of the operator liability doctrine, under which Conoco has the burden to pursue each interest owner and recover the overcharge, *id.*, prescribes a singular outcome whereby the court must use its "broad equitable power" in a narrow way—to "set things right" and compensate those overcharged for the loss of use of the money, *see In re Dep't of Energy Stripper Well Exemption Litig.*, 968 F.2d at 35–36, 39; *Citronelle–Mobile Gathering, Inc. v. Herrington*, 826 F.2d 16, 29 (Temp.Emer.Ct.App.1987). In Conoco's interpretation of the precedent, the only correct way for a district court to "set things right" is to declare a restitutionary award that includes principal and interest. Conoco argues that consistency requires this approach. *Lea Exploration*, 843 F.2d at 513.

In response, Huber argues that the district court retains its full and traditional power to equitably determine the scope of the remedy for a federal common law claim of restitution. *Kern Oil & Refining*, 868 F.2d at 1281. It argues that the only question is whether the district court abused its discretion in evaluating the situation in which it determined to deny prejudgment interest. We agree with Huber's view of the matter.

Conoco's argument impeaches itself because if the district court has broad equitable power then that power is not also concomitantly narrow so as to mandate a remedy including prejudgment interest. In addition, Conoco reads the consistency goal more broadly than expressed by the court in *Lea Exploration*. In *Lea Exploration*, the court acknowledged that the district court has discretion in deciding whether to award prejudgment interest. *Lea Exploration*, 843 F.2d at 512. Speaking to the situation where the Government is attempting to recover overcharges from the producer and/or operator, the court in *Lea Exploration* stated that "normally" an award of restitution would include prejudgment interest. *Id.* at 513. We take the use of the term "normally" in the sense of predicting what will most commonly occur; not as establishing a rule of law that overrides the district court's equitable powers in determining the proper scope of a remedy. *See Van Vranken v. Atl. Richfield Co.*, 38 F.3d 1200, 1201 (Fed.Cir.1994) (reasoning that there was no per se rule against awards of prejudgment interest).

This Court in *Van Vranken* stated that "[t]he absence of a case the facts of which might have led TECA to grant prejudgment interest is not the same as a precedent denying it." *Id.* The converse is true in the present case; simply because heretofore no appellate case has affirmed a denial of prejudgment interest of the temporal magnitude before us does not equate to precedent against such a denial. This conclusion takes additional support from several other factors. First, the district court's equitable power vitiates against a stricture on district court flexibility in determining the amount of prejudgment interest. Second, in addition to its equitable power, the district court had persuasive authority for its denial of prejudgment interest from the case of *Exxon Corp. v. Jarvis Christian Coll.*, No. TY–80–432–

CA, 1991 WL 771247 (E.D.Tex.1991) ("*Jarvis II*"). In that case, a district court in Texas, faced with very similar facts, denied prejudgment interest to an operator who sought restitution from an interest owner who received overcharge payments. *Id.* at *1–2; *Jarvis I* at 653–54.

Compared to the interest owner who escaped paying prejudgment interest in *Jarvis I* and *Jarvis II*, Huber is even more deserving of the court's equity because Conoco never notified Huber of the potential liability. In contrast, in the *Jarvis* cases, the "royalty interest owners were notified by Exxon while they were receiving the [overcharge] payments that they would be called upon to reimburse the amount now determined to be overcharges at some point in the future." *Jarvis II* at *2. The court noted that "the vast amount of prejudgment interest is directly attributable to Exxon and its vigorous opposition of the Department of Energy (DOE)." *Id.; Jarvis I* at 658. In fact, analogizing Huber's situation to the interest owner in the *Jarvis* cases shows that each supposed error that Conoco ascribes to the district court, if it is error at all, is not sufficient error to require reversal on an abuse of discretion review.

■ First, Conoco argues that the district court turned the principles of uniformity and the operator liability doctrine on their head by tagging Conoco as the "master of NECU liability." Under Conoco's interpretation, this role was forced upon it by the operator liability doctrine. While this is true, it does not mean that the district court reversibly erred when it followed persuasive authority from the *Jarvis*

cases, where the *Jarvis* court similarly denied prejudgment interest for an interest owner who was arguably more deserving of a requirement to pay such interest due to having received notice of the potential liability. *Jarvis II* at *2.

Second, Conoco also argues that it is unfair to "place at its feet" the length of time required to litigate the stripper well cases. This argument, however, does not translate into reversible error. Under an abuse of discretion review, a range of reasonable determinations would survive review. For example, the district court might have granted prejudgment interest for a longer or shorter period than the one it chose and many such hypothetical choices would have survived review. Whatever the boundaries of such a range, it must include *Jarvis II*, because the comparison of the case at hand to that case strongly supports that the district court's action was not an abuse of discretion. In both the *Jarvis* cases and the case at hand, the operator of the oil-producing property, here Conoco, was in a greater position of control over the situation compared to the interest owners such as Jarvis Christian College or Huber. The district court permissibly factored this consideration into its equitable calculus and explained this factor by noting that Conoco was in the "far superior position" to disperse and manage information about the potential NECU liability. *Conoco*, 148 F.Supp.2d at 1177. Thus, as between Conoco and Huber, the district court's analysis tags Conoco as the party best positioned to take action to eschew avoidable costs that may (and did) result for either party from the NECU liability.[6] Conoco evidently took this role

---

6. In essence, the district court's equitable calculus relies in part on the concept that "[p]lacing liability with the least-cost avoider increases the incentive for that party to adopt preventive measures and ensures that such measures would have the greatest marginal

effect on preventing the loss." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Riggs Nat. Bank of Washington, D.C.,* 5 F.3d 554, 557 (D.C.Cir.1993) (Silberman, concurring). This Court has endorsed this approach for "superior access to information" for stripper well

seriously because it contends that its practice was to inform the interest owners of their potential liability. With respect to Huber, however, Conoco was unable to produce any evidence of notification. Conoco bore the ultimate burden of proof for its restitutionary claim and while the district court granted the claim for the principal amount, it was within the district court's discretion to equitably limit the prejudgment interest portion of the remedy given Conoco's lack of a showing that it notified Huber. Conoco's argument that no notice was required under Oklahoma fiduciary law is not to the contrary because the lack of a formal legal duty for Conoco to provide notice only vitiated Huber's affirmative defense on that basis; it did not remove the presence or absence of notice as a viable factor that the district court may consider in its equitable remedy determination.

Third, in conjunction with its arguments for a revised standard of review, Conoco argues that the district court was required to find "compelling circumstances" in order to deny prejudgment interest. While we reject Conoco's arguments that this requirement applies, we note that the situation in which Huber finds itself is more compelling than the interest owners in the *Jarvis* cases. This is so because Huber was without notice of the potential NECU liability and was not in control of nor aware of the stripper well certification in which Conoco's miscount of injection wells ultimately engendered the liability at issue here. Thus, while a "compelling circumstances" requirement does not apply, if it did the district court was within its discretion to find that the circumstances of this case are sufficiently compelling.

Finally, at oral argument Conoco stated that this Court's recent opinion in *Chevron U.S.A.*, 281 F.3d at 1251 supported its position. We disagree. *Chevron U.S.A.* is distinguishable for a variety of reasons and does not command an abuse of discretion reversal of the district court's exercise of its equitable powers. First, the issue presented on appeal in *Chevron U.S.A.* is significantly different than the issue present in the current case. In *Chevron U.S.A.*, we determined that Chevron's operator liability restitutionary claim against Mobil was not barred by a consent order entered into between Mobil and the DOE. *Id.* at 1255; *but see id.* at 1256–57 (Clevenger, J., dissenting) (arguing that the consent order extinguished Mobil's liability). Thus, on that basis, Chevron could go forward with its claim. *Id.* at 1256. Second, the opinion in *Chevron U.S.A.* does not even address the issue of whether a district court may exercise its equitable powers and decline to grant prejudgment interest. Certainly, the district court's opinion on appeal here is consistent with *Chevron U.S.A.* in the sense that the district court awarded restitution of the principal amount of the overcharges, as well as some prejudgment interest, to Conoco. Finally, and perhaps most importantly, the working interest owner in *Chevron U.S.A.*, Mobil, had notice of the potential liability. *Id.* at 1251–52. Thus, even if the prejudgment interest question were presented in the *Chevron U.S.A.* appeal (which it is not), this case would be distinguishable.

## IV. CONCLUSION

Because we hold that the district court did not abuse its discretion by declining to

---

liability situations in our opinion in *Conoco Inc. v. Dep't of Energy*, 99 F.3d 387 (Fed.Cir. 1996), where we held that the DOE should bear the burden of proof as to whether third-party consent orders extinguished a party's

liability because the "DOE presumably has superior access to information regarding its negotiations with [working interest owners]." *Id.* at 397.

award Conoco prejudgment interest for the entire time period while Conoco was litigating its overcharge liability and during which Huber was without notice from Conoco of its potential liability, we affirm the district court's decision.

*AFFIRMED.*

COSTS

No costs.